IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RABBIT TANAKA CORPORATION, USA a Texas corporation, and RABBIT TANAKA CORPORATION, LTD. a Hong Kong corporation, | ) ) ) ) ) | No. 08 CV 1455 |
| Plaintiffs, | ) ) | Judge Kendall |
| v. | ) ) | |
| WALGREEN CO., an Illinois corporation, and TRADEWINDS INTERNATIONAL ENTERPRISES, INC., a California corporation, | ) ) ) | Magistrate Judge Nolan |
| Defendants. | ) ) ) | |

## RABBIT TANAKA'S NOTICE AND MOTION FOR A TEMPORARY RESTRAINING ORDER

To:  Counsel for Defendants: via e-mail to efo@eclipsegrp.com

Plaintiffs herby give notice that they will appear before the Honorable Judge Virginia M. Kendall, at courtroom 2319 at the US courthouse at 219 S. Dearborn Street, Chicago, IL, at 4:00 pm on March 13, 2008, to there present the following motion. You are invited to attend and participate.

Plaintiffs Rabbit Tanaka Corporation and Rabbit Tanaka Ltd. respectfully and urgently move the Court under Rule 65(b), F.R.Civ.P. to (1) enjoin Defendants Walgreen Co. and Tradewinds International, and its and their officers, agents, employees, and others in concert with it or them from infringing Plaintiffs' patented invention and trade dress of its successful "Virtual Vision - Salt Water Fish" product by Defendants' advertising, marketing, offering for sale, and/or sale of Defendants' "Living Aquarium - Animated Ocean Lamp" product in US

0992446

commerce and (2) to require Defendant Tradewinds to immediately dismiss under F.R.Civ.P. 41(a)(1) or to transfer to this Court under 28 U.S.C. § 1404(b) its Declaratory Judgment suit, no. CV 08-1334 ODW (JTLx), filed in the U.S. District Court for the Central District of California on February 27, 2008, during negotiations over the subject matter hereof.

Plaintiffs have for many years developed, manufactured, imported into the US, marketed, and sold innovative novelty lamps through many US distributors and retailers, including Spencer Gifts, Mijers, Dillards, QVC, Target, Hastings, ShopCo, Lamps Plus, Value City Stores, J. C. Penny, Go Glow Ltd., Home Base, K. B. Toys, and Linens N Things (Ex. B). Many other retailers and distributors have introduced infringing products but have stopped and paid infringement damages to Plaintiffs: these include Target Stores, Kohls, Holmes, Image Maker Inc., Michael's Stores, Rose Art, and Zany Brainy (Ex. B). Plaintiffs' "aquarium" lamps, having a scene of fish swimming past a reef in a coral sea illuminated from within or behind, have become ubiquitous. The patented lamp (Ex. D) has two counter-rotating, endless screens outwardly of a lamp bulb positioned inwardly of the paths of the screens, so that the colorful tropical fish (printed on the transparent outer screen) are seen swimming past the coral reef printed on the inner screen.

Plaintiffs' aquarium lamp configuration is so ubiquitous, indeed, that many other importers have copied Plaintiff's idea and patented structure to make and sell competing aquarium lamps. In every one of the instances of copying and infringement known to Plaintiffs, the offending importers and their US distributors have ceased their importation and sale upon demand of Plaintiffs and nearly all have paid money to Plaintiffs to compensate Plaintiffs for the past infringement (Ex. B). Here, Defendants Walgreen and Tradewinds have declined to stop their infringing sales of their version of the aquarium lamp (Ex. C), and indeed Tradewinds has filed a declaratory judgment suit in its home forum (Ex. E) during the time of negotiations with Plaintiff's counsel over this matter. Tradewinds states in its Complaint that its counsel also represents its customer Walgreen, although Walgreen is not named in the California suit.

As set forth in the accompanying Memorandum in Support of Motion for Issuance of Temporary Restraining Order, the grounds for this Motion are as follows:

## INTRODUCTION

1.      Plaintiffs have filed their Complaint.  Their Memorandum of Law in Support of this Motion is submitted herewith; Exhibits A-F relied on are attached to this Motion.

2.      Plaintiff Rabbit Tanaka Corporation is doing business in this District and generally throughout the United States by the offering, sale, and distribution of its products.  Plaintiff Rabbit Tanaka Ltd. is an alien entity operating in Hong Kong, China, and is supplier to Rabbit Tanaka Corporation, USA, its wholly-owned subsidiary.  The patent in suit is owned by Rabbit Tanaka Corporation, Ltd., of Hong Kong (by assignment of September 29, 2000) and is exclusively licensed to, its wholly owned subsidiary.

3.      Defendant Walgreen is a corporation of Illinois, with its headquarters in Deerfield, IL  60015.  It is doing business in this District and throughout the state of Illinois and the nation by retail "drug store" facilities and distribution centers for merchandise including Defendant Tradewind's "Living Aquarium - Animated Ocean Lamp".

4.      Defendant Tradewinds is a corporation of California, with its principal place of business in San Francisco, CA  94080.  It is sole importer of the "Living Aquarium" lamp sold at retail by defendant Walgreen.

5.      This Court has subject matter jurisdiction over the controversies between the parties under the Patent statutes, 35 U.S.C. §§ 1 et seq., and under the Lanham Act, 15 U.S.C. §§ 1121 and 1125.  This Court has personal jurisdiction over each of the Defendants because they have transacted business in Illinois, committed tortious acts in Illinois, and made and performed contracts substantially connected with the State of Illinois.  This Court has pendant jurisdiction over the related state law claims under 28 U.S.C. § 1338(b).

6.    Venue is proper under 28 U.S.C. § 1391, as Defendant has committed acts in this District of patent and trade dress infringement and other acts of unfair competition as are alleged in the Verified Complaint filed in this case.  This forum is more convenient for the parties and witnesses than a California forum.

## BASES FOR RELIEF

7.    The Plaintiffs will suffer immediate irreparable injury if injunctive relief as requested is not granted.

8.    The Plaintiffs have no adequate remedy at law.

9.    The Plaintiffs will very likely succeed on the merits of this case: the product appearances are confusingly similar and the patent claims, properly interpreted, are literally infringed by Defendants' device.

10.    The balance of harms greatly favors Plaintiffs over Defendants, as does the public interest in having Plaintiffs' patent and trade dress rights respected by others to avoid public confusion.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray that their Motion be granted and that this Court enter an order:

(a)  Temporarily Restraining Defendants and each of them from further infringement and unfair competition and other illegal acts, in the form attached hereto as Exhibit F;

(b)  Enjoining Defendant Tradewinds from prosecuting its California action for Declaratory Judgment in favor of this case; and

(c)  Setting a TRO bond in this matter at $5,000.00, to be paid into the Court's registry.

(d)  Providing such other and further relief as this Court deems appropriate.

- 4 -

DATED this 13th day of March, 2008.

Respectfully submitted,

By   /RJ Schneider/            .
Attorneys for Plaintiffs:
  Robert J. Schneider
  John R. Crossan
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000
FAX: 312-803-5299
bschneid@chapman.com
crossan@chapman.com

**Attached Exhibits**

Plaintiffs' Patent in Suit, no. 5,685,097 .................................................................. A

Declaration of Cathrine Locsin, President of Tanaka USA ................................... B

Defendants' "Living Aquarium - Animated Ocean Lamp" product and box ........ C

Plaintiffs' "Virtual Vision - Salt Water Fish" lamp product and box ................... D

Defendant Tradewind's February 27, 2008, Complaint in C.D. CA ..................... E

[Proposed] Temporary Restraining Order ............................................................. F

CERTIFICATE OF SERVICE

A true copy of the foregoing **PLAINTIFFS' MOTION FOR A TEMPORARY RE-STRAINING ORDER**, with a [Proposed] Order and Exhibits A-E is being served on counsel for Defendants this 13th day of March, 2008, at 2:00 p.m., addressed as follows:

Edward O'Connor, Esq.
efo@eclipsegrp.com


/R.J. Schneider/
Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RABBIT TANAKA CORPORATION, USA a Texas corporation, and RABBIT TANAKA CORPORATION, LTD. a Hong Kong corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO., an Illinois corporation, and TRADEWINDS INTERNATIONAL ENTERPRISES, INC., a California corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08 CV 1455<br><br>Judge Kendall<br><br>Magistrate Judge Nolan |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiffs have moved for entry of a Temporary Restraining Order to stop Defendants from violating Plaintiffs' patent and trade dress and other rights, and from prosecuting a parallel declaratory judgment action one of them has filed in California, and in support hereof respectfully state as follows:

### I.     THE FACTUAL BACKGROUND

This lawsuit is an action for patent and trade dress infringement and related claims against Defendants' offering and sale in the United States of the accused "Living Aquarium - Animated Ocean Lamp" (Ex. C to the Motion). Sale of that product in the US by Defendants, for $10 per copy, was discovered just 12 weeks ago, and Plaintiffs by their counsel immediately on December 21, 2007, contacted Defendant Walgreen and followed up with its supplier, Defendant Tradewinds. Negotiations were continuing when Tradewinds filed a Declaratory Judgment action (Ex. E to the Motion) against Plaintiffs on February 27, 2008, in the federal district court

TRO Memo-1.doc

at San Francisco. The parties have further discussed settlement since that filing, but without resolution.

Plaintiffs' high quality animated aquarium lamp (Ex. D) sells for $22 to $30 each, and is the only other such lamp on the market. Plaintiffs sell the patented lamp to numerous distributors and retailers in the USA, including Spencer Gifts, Mijers, Dillards, QVC, Target, WalMart, Hastings, ShopCo, Lamps Plus, Value City Stores, J. C. Penny, Go Glow Ltd., Home Base, K. B. Toys, and Linens N Things. (Ex. B to the Motion). Loss of sales to the temporarily cheaper lamp of Defendants is on-going, causing the Tanaka Plaintiffs and members of their sales network irreparable harm not only in lost income but in lost goodwill for their own product.

Plaintiffs are innovators in novelty lamps and accessories for the home. Their Virtual Vision products are protected by U.S. patent no. 5,685,097 (Ex. A to the Motion), which was issued in November 1997 and has had its maintenance fees paid to maintain it in force now out to November 11, 2009. It is assigned to Plaintiffs since 2000. In one embodiment, the drawings of the '097 patent (Ex. A) disclose a generally frusto-conical lamp design, but many of the '097 patent claims read equally well -- and literally, in every respect -- onto the generally rectangular lamp design (Ex. C) of Defendants. Claim 1 is representative of the claims of the '097 patent; the following chart shows the literal infringement of Claim 1 by the accused product:

| Claim 1 of the '097 Patent | The Defendants' "Living Aquarium" device |
|---|---|
| 1. An illuminated decorative device comprising: | Same |
| a base; | Same |
| a source of illumination supported on said base; | Same, a circular fluorescent light bulb is supported on the base. |
| a first translucent member supported on said base, said first translucent member having a pattern formed thereon of at least two colors, said first | Same, a translucent inner screen with a coral reef printed thereon in multiple colors surrounds the light bulb. |

2

| | |
|---|---|
| translucent member surrounding said source of illumination; | |
|     a second translucent member supported on said base, said second translucent member having a pattern formed thereon of at least two colors, said second translucent member surrounding said first translucent member; | Same, a translucent outer screen with fish images in multiple colors printed thereon surrounds the inner screen. |
|     a third translucent member supported on said base surrounds said second translucent member, said third translucent member is formed with magnifying and reduction portions; and | Same, a translucent outer casing supported on the base surrounds the outer screen and has magnifying and reducing portions formed therein. |
|     a drive system supported on said base, said drive system moving said first translucent member with respect to said base, said drive system moving said second translucent member with respect to said base and with respect to said first translucent member, whereby the illumination from said source of illumination as observed through said third translucent member is a varying pattern of colors, shapes and magnification thereof depending upon the relative positions of said first, second and third translucent members with respect to each other. | Same, a drive system supported on said base moves both screens with relative motion between them above the fixed base and within the fixed outer casing for the same purpose and effect. |

Defendants' trade dress on its store packaging for its "Living Aquarium" also mimics that of Plaintiffs' "Virtual Vision" aquarium (compare 2nd pages of Exs. C and D). Both packages show large coral reef images that are tilted upwardly to the right. Both show the product inside as lit from within and displaying their fish and coral reef images. Colors of both boxes are predominantly dark blue. Both show the fish "swimming" to the right as viewed from the front, the fish images growing larger and smaller as they pass the magnifying and reducing portions of the outer casing. Pricing is similar - $22 to $30 for Plaintiffs' Virtual Vision aquarium, and $39.95

3

reduced to "Now $10!" for the Defendants' product. Neither box identifies a corporate source for the respective product except on the bottom - Defendants' in very small print - and both are said there to be made in China. Plaintiffs' box contains a patent marking notice on its bottom.

When Plaintiffs learned of the Living Aquarium being sold by Walgreen's stores, their counsel contacted Walgreen counsel in Illinois, who referred us to Tradewinds counsel in San Francisco. Our letter of December 21, 2007 demanded that Walgreen and its supplier Tradewinds cease and desist from their infringement and account to Plaintiffs for their past infringement. No agreement has been reached. During negotiations, Tradewinds quietly filed a declaratory judgment suit in the federal district Court at San Francisco (Ex. E), making claims of no patent infringement and of mis-marking of the '097 patent number on Plaintiffs' lamp. That suit names both Plaintiffs here and defendants but does not include Walgreen as a DJ plaintiff; service has not yet been made on either of the Plaintiffs.

Other manufacturers, importers into the USA, and retailers have acknowledged the validity of the '097 patent by paying money to Plaintiffs for their infringement of that patent by various other virtual aquariums meeting the patent claims. These include Target Stores, Kohls, Holmes, Image Maker Inc., Michael's Stores, WalMart, Rose Art, and Zany Brainy (Ex. B). This respect given the patent in suit, by the acquiescence of these competitors, is good precedent for upholding the validity and enforceability of the '097 patent. *Smith Int'l Inc. v. Hughes Tool Co.*, 718 F.2d 1573 (Fed. Cir. 1983).

Defendants are causing immediate and irreparable damage to Plaintiffs, to their reputation, and to Plaintiffs' goodwill in the Virtual Vision aquarium product. Defendants' ongoing importation and sales of Tradewinds' infringing, unfair product is willful and deliberate and must not continue.

4

## II.    ARGUMENT

### A.    THE BASES FOR INJUNCTIVE RELIEF

The Patent Act and the Lanham Act both empower the Federal District Courts with the jurisdiction and authority to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable to prevent violation of the right of an owner of a patent and/or of trade dress under applicable federal law. 35 U.S.C. §§ 283; 15 U.S.C. §§ 1116(a), 1125(a).

A party seeking to obtain a TRO or a preliminary injunction must demonstrate that (1) it has a reasonable likelihood of success on the merits of the underlying claim, (2) no adequate remedy at law exists, (3) it will suffer irreparable harm which, absent injunctive relief, outweighs the harm the respondent will suffer if the preliminary injunction is granted, and (4) the injunction will not harm the public. *See, e.g., Reebok Int'l Ltd. v. J. Baker Inc.*, 32 F.3d 1552 (Fed. Cir. 1994); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002); *Platinum Home Mortgage Corp. v. Platinum Financial Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). No single one of the four factors is dispositive, but each factor must be weighed against the others and against the relief requested. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446 (Fed. Cir. 1988). Patent-based injunctions are considered and issued on the same grounds as other injunctions, in the equitable discretion of the district court. *eBay, Inc. v. MercExchange*, ___ U.S. ___, 126 S.Ct. 1837 (2006).

In determining whether a likelihood of confusion of trade dress exists, courts consider the following factors: "(1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the asserted mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the mark's owner." *Ty, Inc. v. Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001). Courts have recognized that although none of these factors is dispositive, "the similarity of the marks, the intent of the defendant in choosing

the objected-to mark, and evidence of actual confusion are the 'most important factors' in a like-lihood of confusion case." *Id.* (*citing G. Heileman Brewing Co. v. Anheuser -Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989)).

To establish a likelihood of success on the merits of its federal patent and trade dress and federal and state unfair competition claims,[1] Plaintiffs need only establish that they have a valid and legally protected right and that the Defendants are violating that right. Ownership of the patent, prior industry acquiescence in its validity and enforceability, literal reading of the claim onto the accused product, and sale of the accused product by the Defendants are all that is neces-sary for proof of likely success on the merits. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230 (Fed. Cir. 1230).

The status quo that a temporary restraining order is to preserve is, of course, that existing just prior to commencement of the infringing acts. *Litton Systems Inc. v. Sundstrand Corp.*, 750 F.2d 952 (Fed. Cir. 1984). Further infringement is to be stopped, without adjudicating the con-sequences of past infringement. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230 (Fed. Cir. 1985).

To show a likelihood of success on the merits, the party seeking to obtain a temporary re-straining order need only show that it has a "'better than negligible' chance of succeeding on the merits." *Platinum Home Mortgage Corp.*, 149 F.3d at 726; *see also Ty, Inc.*, 237 F.3d at 897.

---

[1]     Claims arising under state common law unfair competition claims follow the same analysis as that used in trademark infringement claims under the Lanham Act. *See, e.g., Lorillard Tobacco Co. v. A & E Oil, Inc.*, 2006 WL 1430774, at *3 (N.D. Ill. 2006); *Super Wash, Inc. v. Sterling*, 2006 WL 533363, at *2

### B.    PLAINTIFFS HAVE A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

### 1.    The Patent Infringement Claim

Complete literal and substantive response of Defendants' accused "Living Aquarium" product to Claim 1 of the '097 patent is shown in the claim chart for Claim 1, above. No claim interpretation under the *Markman* decision[2] is presently needed, as all the words in the claim are common, ordinary ones with no special meanings attached; if Defendants have any dispute over particular words, or if the Court has any question, interpretation issues can be initially resolved at the TRO hearing or at the preliminary injunction stage of this case.

Ownership of the '097 patent by one of the Plaintiffs and timely payment of the required maintenance fees to keep the patent in force through November 11, 2009 are of record in the US Patent Office[3]. The Declaration (Ex. B to the Motion) of Cathrine Locsin, President of Tanaka USA, establishes the respect the '097 patent is given by many retailers and importers in the home accessories and novelties industry, including the payment of infringement damages in lieu of infringement suits and the ceasing of infringement by each of the many such retailers and importers in acquiescence to the validity and enforceability of the '097 patent against them. Present Defendants have no better chance of establishing invalidity or unenforceability than did those prior infringers.

### 2.    The Trade Dress Infringement Claim

Defendant's use of Plaintiff's trade dress is very likely -- indeed certain -- to cause confusion among seekers of Plaintiffs' product, a novelty lighted aquarium lamp with moving fish against a coral reef. The packaging of the products is virtually identical, as explained above and

---

[2]    *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1995).

[3]    A third and last maintenance fee is payable starting November 11, 2008 and until May 2009, or even after then with a small surcharge until November 11, 2009, to keep the patent in force out to 20 years from its application date, i.e., December 20, 2015.

will be demonstrated at the hearing. The first prong of the trade dress infringement analysis is satisfied, as the points of similarity create a very strong likelihood of finding confusion between the trade dress of the Defendants and that of Plaintiffs..

The second prong of the trademark infringement analysis is also satisfied. The products offered by both sides here are identical in function and purpose and are offered to the same public in the same geographic areas - throughout the nation. Defendants are offering, marketing, and selling waterless aquariums in Chicago and throughout the nation that are very similar to those offered here and throughout the nation by Plaintiffs.

Confusion between Defendants' product and Plaintiffs' product is clearly intended, as the Defendant is using all the elements of Plaintiffs' invention and many of the elements of Plaintiffs' trade dress for the identical product sold in the same channels of commerce to the same consumers.

## C.    THERE IS IRREPARABLE HARM AND NO ADEQUATE LEGAL REMEDY

Patent rights expressly include the right to exclude others from making, using, selling, and offering to sell what is claimed as the invention protected by a patent during its term. This right is provided by the Constitution and enacted by Congress in the patent laws; only principles of equity may bar invocation of this right. *eBay, supra.* Here, the goods are novelty items, not medical or national security items that may carry countervailing concerns. Plaintiffs have and can continue to meet the entire market demand for these novelty lamps, so there is no cause for allowing Defendants to continue their infringement. Although Defendants' current pricing is below that of Plaintiffs' original lamp, that is only temporary - the "normal retail price" shown for the infringing lamp is above that of Plaintiffs' lamp: $39.95 versus about $22 to $30.

As to the trade dress infringement, "It is well settled that injuries arising from Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business

loss." *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Courts have noted that because it is difficult to assess damages associated with loss of goodwill, such damages are considered to have no adequate remedy at law, and to be irreparable. *Id.*

Here, upon demonstrating that there is a substantial likelihood that it will succeed on the merits of their patent and their trade dress infringement clams, Plaintiffs should have the benefit of the presumption of irreparable harm in their favor. As set forth in the Complaint, Plaintiffs have suffered and will continue to suffer loss of customers and potential customers and injury to their reputation and goodwill if Defendants were allowed to continue to offer, market, and sell their "Living Aquarium" product as presently configured.

### D.    BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH IN FAVOR OF PLAINTIFFS

The public has an interest in assuring that customers and potential customers are not deceived or confused in the marketing and sale of products and services. *Platinum Home Mortgage Corp., supra*, 149 F.3d at 734 (7th Cir. 1998) ("[I]n trademark infringement cases ... the relevant consideration in determining whether the public interest will be disserved by the grant of an injunction is the consumer's interest in not being deceived about the products they purchase."). Customers and potential customers for novelty aquarium lamps such as Plaintiffs' are entitled to know what products and services they are receiving and not have to sort through confusingly and deceptively similar goods to choose the desired lamps from the originator of that item.

The public also has an interest in having an owner's rights in all its intellectual property fully respected. *Id.* (noting that protection of trademarks and other intellectual property rights is not anticompetitive because "[c]ompanies need a way to capture their investments in good will and reputation.... Free riding by a newcomer on the first company's name ... does not help competition..."). The configuration of Plaintiffs' Virtual Vision aquarium is a common law

trademark belonging to Plaintiffs, and they have invested much time and resources in making that configuration meaningful and recognizable. As such, Plaintiffs should be entitled to continue to control and to realize the benefits of that trade dress and the underlying invention. Plaintiffs should not have to suffer indeterminate financial loss and damage to their reputation and good will awaiting a decision on the merits.

Further, the potential and actual harm to Plaintiffs outweighs any threatened harm to Defendants if, as requested, an injunction now issues. Defendants have made and sold their copied aquarium for just weeks, apparently, and knew when they made and sold same that it was copied from Plaintiffs' patented product. The balance of harms weighs heavily in favor of Plaintiffs.

## III.    THE TERMS OF THE [PROPOSED] TEMPORARY RESTRAINING ORDER ARE REASONABLE AND FAIR IN THE CIRCUMSTANCES

The proposed Temporary Restraining Order in part I does no more than is necessary to end any further infringement and unfair competition caused by Defendant's actions. Defendants may collect their infringing goods from warehouses and stores and destroy them or ship them out of this country to places where Plaintiffs have no patent or trade dress rights, as Guatemala or Argentina.

The proposed TRO in its part II avoids Defendant Tradewind's surreptitious effort to win a "race to the Courthouse" by filing its Declaratory Judgment action in San Francisco, remote from the places of business of Plaintiffs and their counsel. Walgreen, the real party in interest here, is properly sued in this Court, and Tradewinds can come here to defend this suit for Walgreen -- the same as it came here to negotiate its supply agreement with Walgreen.

## IV.    CONCLUSION

For the foregoing reasons, the Rabbit Tanaka plaintiffs respectfully request that the Court immediately grant its Motion for Issuance of a Temporary Restraining Order.

10

DATED this 13th day of March, 2008.

Respectfully submitted,

By _____/R J Schneider/_____.
    Attorneys for Plaintiffs
    Robert J. Schneider
    John R. Crossan
    CHAPMAN AND CUTLER LLP
    111 West Monroe Street
    Chicago, Illinois 60603
    (312) 845-3000
    FAX: 312-803-5299
    bschneid@chapman.com
    crossan@chapman.com

## CERTIFICATE OF SERVICE

A true copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUP-PORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER**, is being served on Defendants counsel by e-mail as indicated below at 2:00 p.m. his 13th day of March, 2008, addressed as follows:

Edward O'Connor, Esq.
The Eclipse Group, Inc.
1920 Main Street, #150
Irvine, CA 92614
efo@eclipsegrp.com

    _____/R J Schneider/_____
    Counsel for Plaintiffs

# Exhibit A

US005685097A

# United States Patent [19]

**Marinov**

[11] Patent Number: 5,685,097

[45] Date of Patent: Nov. 11, 1997

[54] **ILLUMINATED COLORED DISPLAY DEVICE**

[75] Inventor: **Daniel Marinov**, Quarry Bay, Hong Kong

[73] Assignee: **Haggerty Enterprises, Inc.**, Chicago, Ill.

[21] Appl. No.: **575,255**

[22] Filed: **Dec. 20, 1995**

[51] Int. Cl.⁶ .................................................. G09F 13/32
[52] U.S. Cl. .............................. 40/431; 362/283; 362/811
[58] Field of Search ............................ 40/431, 436, 444;
362/811, 283, 284, 336

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 99,235 | 4/1936 | Wolfson . | |
| D. 102,868 | 1/1937 | Barrett . | |
| 1,099,879 | 6/1914 | Hutchings | 40/431 |
| 1,178,732 | 4/1916 | Koken | 40/431 |
| 1,612,362 | 12/1926 | Decker | 40/431 |
| 1,652,779 | 12/1927 | Gillinder | 362/356 |
| 1,871,073 | 8/1932 | Walker | 40/431 |
| 2,608,779 | 9/1952 | Joy | 40/431 |
| 2,702,850 | 2/1955 | Harling | 362/336 |
| 2,867,716 | 1/1959 | Ream | 362/811 X |
| 3,179,791 | 4/1965 | Mole | 362/806 X |
| 3,686,494 | 8/1972 | Naylor | 362/811 X |
| 3,791,058 | 2/1974 | Mollica | 362/811 X |
| 3,964,194 | 6/1976 | Gugeler | 362/811 X |
| 5,065,289 | 11/1991 | Teng | 362/269 X |
| 5,339,224 | 8/1994 | Woehler | 362/35 |
| 5,394,309 | 2/1995 | Brown | 362/806 X |
| 5,442,524 | 8/1995 | Farmer | 362/284 X |

*Primary Examiner*—Joanne Silbermann
*Attorney, Agent, or Firm*—Keck, Mahin & Cate

[57] **ABSTRACT**

An illuminated colored display device having a pair of counter rotating translucent members bearing colored patterns thereon, and a light distorting, magnifying and reducing, member surrounding a source of light, such that when viewed from a fixed location the display device a changing display of colors and shapes is observed.

**13 Claims, 3 Drawing Sheets**





FIG. 2

FIG. 3



FIG. 4



## FIG. 5



## FIG. 6



5,685,097

**1**

# ILLUMINATED COLORED DISPLAY DEVICE

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to illuminated colored display devices, and more particularly to a display device which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer.

### 2. Description of Related Art Including Information Disclosed under Secs. 1.97–1.99

Various types of ornamental illuminated display devices have been provided in the past. Some of these devices have obtained a desired visual effect of changing light patterns by passing light through liquids contained within transparent housings located between the viewer and the source of light. Two or more liquids of different colors may be utilized, with air bubbles being passed through the liquids to provide changing colors and patterns. Typical of such devices are those shown in U.S. Pat. Nos. 3,613, 264 - Vitka et al, 3,706,149 - Olivieri, and 3,964,194 - Gugeler. For instance, the Gugeler patent describes a changeable color device wherein an illumination source is located within three concentric cylinders formed of a light transmissive material, between pairs of which air is bubbled through a liquid.

Other ornamental illuminated display devices have obtained the desired visual effect of changing light patterns by causing the movement of one or more light transmissive means of varying shapes and colors with respect to the light source. Typical of such devices are those shown in the following Unites States patents:

| | |
|---|---|
| 2,867,716 — Ream | 3,791,058 — Mollica |
| 3,179,791 — Mole | 5,065,289 — Teng |
| 3,686,494 — Naylor | 5,394,309 — Brown |

The Ream patent discloses an ornamental display device wherein a bulb is located in a rotating drum which is provided with perforations through which light projects to a clear plastic cylindrical shell. The Mole patent describes an illuminating device wherein three lens of different colors are mounted in a triangular form on a support which rotates about a light source. The light passing through the lens also passed through an aperture formed in the spherical housing containing the light source and lens.

The Naylor patent illustrates a lighting apparatus wherein two concentric cylindrical light transmissive members having designs thereon are caused to counter-rotated around a light source. The heat generated by the light source causes air currents to engage blades secured to the cylinders to cause them to rotate. The Mollica patent sets forth a device for providing visual effects including a source of black light located within a rotatable hollow cylindrical translucent element having a pattern thereon subject to fluorescence. The translucent element is surrounded by a cylindrical lens which is located within a translucent rectangular housing.

The Teng patent reveals a display device which includes a crystal ball having a plurality of concave and convex portions which when filled with water form concave and convex lens through which is observed a decorative article within the ball. The ball is caused to rotate with respect to the base on which it is supported. The Brown patent is directed to a submersible device for changing colors in an aquarium, wherein a domed member having transparent plates of varying colors is caused to rotate around a light source, with the light of varying colors projecting into the water through clear transparent windows in a housing enclosing the device.

**2**

## SUMMARY OF THE INVENTION

It is an object of this invention to provide an illuminated colored display device which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer. It is a further object of this invention to provide an illuminated colored display device which is readily adapted to provide changing colors in different hues and in different changing patterns. It is a still further object of this invention to provide such an illuminated colored display device which is readily assembled from limited number of components which are readily manufactured.

In accordance with this invention an illuminated colored display device is provided which includes a base, and at least two translucent members which are supported on turntables which are in turn supported by the base and are rotated with respect to the base by a drive system included in the base. The translucent members, which in the preferred embodiment are of a frustum shape, surround a source of illumination which is also supported on the base. Colored patterns consisting or areas of two or more colors or clear areas are provided on the translucent members. A third translucent member, which is supported on the base in a fixed position is of the same general shape as the others, but is formed with regions of varying thickness such that it distorts the light passing through it so as to both magnify and reduce the various colored areas to provide a visual effect which varies in color, and shape. An opaque cover is supported on the third translucent member over the ends of all of the translucent members. The translucent members may be lifted from the base to gain access to the source of illumination which in the preferred embodiment is an electric light bulb.

Other objects and further details of this invention will be set forth my making reference to the following drawings and specification.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of an illuminated decorative device in accordance with this invention.

FIG. 2 is an exploded perspective view of the illuminated decorative device in accordance with this invention.

FIG. 3 is a top plan view with portions removed and other portions broken away of the base of the illuminated decorative device in accordance with this invention.

FIG. 4 is a cross-sectional view of the base of the illuminated decorative device in accordance with this invention taken along the lines 4—4 in FIG. 1.

FIG. 5 is an exploded fragmentary view of a portion of the illuminated decorative device in accordance with this invention.

FIG. 6 is an exploded fragmentary view similar to FIG. 5 showing portions of the illuminated decorative device in accordance with this invention in a different position.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIGS. 1 and 2, a preferred embodiment of the illuminated decorative device 10 of this invention is shown. The principal components of the illuminated decorative device are a base 12, a first translucent member 14, a second translucent member 16, a third translucent member 18 and a cap 20.

5,685,097

**3**

The first, second and third translucent members 14, 16 and 18 are of a generally cylindrical or more particularly a frustum shape, with the larger diameter end being positioned toward the base and the smaller diameter end being positioned away from the base. The second translucent member 16 is of a larger diameter than the first translucent member 14, and the third translucent member 18 is of a larger diameter than the second translucent member 16, such that the third translucent member may be placed around the second and the second around the first. In the preferred embodiment of this invention, the first, second and third translucent members are formed of a clear translucent plastic body.

Translucent color patterns are provided on the surfaces of the first and second translucent members 14 and 16. As shown in FIGS. 2, 5, and 6, a two-color pattern consisting of red 28 and yellow 30 areas is provided on the surface of the first translucent member 14. This color pattern may be applied in various ways, such as by painting, for instance by silk screen or by securing a transparent film formed with areas of each of the colors, to the member 14, or by applying two films, each of which bears one of the colors. Similarly, a colored pattern is provided on the surface of the second translucent member 16. As illustrated in FIGS. 2, 5, and 6, blue 32 and yellow 34 areas are provided, as well as clear areas 36. Further, in some areas, the blue and yellow overlap so as to provide a generally green area 38. Again, the colored areas may be provided in numerous different ways known in the art.

The third translucent member 18 has a generally smooth inner surface and a wave-like outer surface, such that it has alternate thin areas 40 and thick areas 42. These alternating thin and thick areas provide a vertically oriented pattern of alternating magnifying and reducing portions.

As will be more fully explained hereafter with reference to FIGS. 3 and 4, a drive system is provided in the base 12, which in conjunction with turntables supporting the first and second translucent members 14 and 16, causes each of them to rotate with respect to the base in an opposite direction with respect to each other. Thus, with the first and second translucent members rotating in the illuminated decorative device as shown in FIG. 1, varying patterns of shape and color are observed at a fixed point spaced from the illuminated decorative device.

Referring now to FIGS. 3 and 4, the drive system which causes the first and second translucent members to rotate with respect to the base and in opposite directions with respect to each other will be described. The truncated cone-shaped base 10 is provided with a top 44, from which is suspended by downwardly projecting posts 46, a portion of one of which is shown, an electric drive motor 48. The output shaft of the drive motor has affixed thereto a gear 52 which engages a gear 54 which is connected to a shaft, (not shown) which extends through the top 44 and has secured thereto a pair of gears 56 and 58 which are of different diameters. The smaller diameter gear 58 drives still another gear 60 which is supported on a post 62 extending from the base 44. The gear 56 also drives a gear 64 which is supported from another post 66 which extends from the base 44.

A first turntable 68 as shown in FIGS. 3 and 4 is provided for supporting the first translucent member 14. The first turntable 68 has an aperture therein such that it fits over an upwardly extending cylindrical member 70 of the top 44. A downwardly projecting cylindrical member 71 is provided on the first turntable 68. Formed on the outer surface of the cylindrical member 71, which surrounding the cylindrical

**4**

member 70, is a gear 72 which engages the teeth of gear 60, as is best seen in FIG. 3, so as to be driven by the motor 48.

Similarly, a second turntable 74 is provided for supporting the second translucent member 16. The second turntable 74 is provided with a downwardly extending cylindrical portion 76, on the inner surface of which is formed a gear 78. As best seen in FIG. 3, the gear 78 is engaged by the gear 64 such that the second turntable 74 is also driven by the electric motor 48.

To summarize, the drive train for the first turntable 68, which supports the first translucent member 14 includes gears 52, 54, 56, 60 and 72. The drive train for the second turntable 74, which supports the second translucent member 16, includes gears, 52, 54, 58, 64 and 78. It will be apparent to a person skilled in the art that by varying the diameters of the various gears involved in the gear trains, the speeds of rotation of the turntables 68 and 74 may be changed with respect to the base 12, and also with respect to each other. Thus, with the drive trains as shown, energization of the motor 48 will cause the turntables 68 and 74 and therefore the first and second translucent members 14 and 16 to rotate in opposite directions with respect to each other.

Supported in the center of base 12 is a electrical lamp socket 80 for receiving and energizing a source of illumination 82 such as an incandescent light bulb as shown in FIGS. 5 and 6. The energized light bulb provides light which is transmitted through first, second and third translucent members to a viewers eyes.

Referring to FIGS. 5 and 6, the light source 82 is shown along with exploded, partial sectional views, of the first translucent member 14, the second translucent member 16 and the third translucent member 18. In accordance with conventional standards for designating color, the first translucent member is shown to have a pattern of red and yellow areas. Similarly, the second translucent member is shown to have blue, yellow, green and clear areas. As light from the light source 82 passes through the first and second translucent members 14 and 16 and the colors thereon, changing color patterns are observed through the third translucent member 18 due to the motion of the first and second translucent members 14 and 16 with respect to each other. It should be understood that the colors represented on the third translucent member 18, in FIGS. 5 and 6 are those which are viewed from an external point. The colors do not represent actual colored areas of the third translucent member, but rather the changing colors of the light which has passed through members 14 and 16. FIG. 6, is similar to FIG. 5, but shows the first and second translucent members 14 and 16 in a subsequent position with respect to each other. A comparison of the colored areas on third translucent member 18 in FIGS. 5 and 6 illustrates the changing of the pattern and of the color as observed through member 18 due to the displacement of members 14 and 16 with respect to each other.

As shown in FIGS. 5 and 6, a translucent but light dispersing thin member 84 may be provided between light source 82 and the first translucent member 14, to disperse the light emitted from the source 82, so as to eliminate the viewing of a particularly bright spot through the three translucent members.

Finally, in a preferred embodiment, an opaque cap 20 is placed upon the top of the third translucent member 18 and supported thereby. Annular openings 84, 86 and 88 are provided in the top of the cap 20 to permit The convective air flow through the base and inside the first translucent member 14 around the lamp 82 to dissipate the heat generated thereby.

5,685,097

5

It should be further noted that the first, second and third translucent members and the cap 20 may be easily lifted off the base 12 and the turntables 68 and 74 to gain access to the bulb 82.

While a particular embodiment of the invention has been shown, it would be apparent to one skilled in the art that the particular shape of the base 12 and of the first, second and third translucent members 14, 16, and 18 could be readily changed as could the pattern of colors and the colors provided on the first and second translucent members 14 and 16. Further, rather than providing the alternating thick and thin wall portions in third translucent member 18, so as to provide alternately reducing and magnifying areas, it could be of uniform thickness or of irregular thickness in various arrangements.

It should be apparent to those skilled in the art that while what has been described are considered at present to be the preferred embodiments of the illuminated colored display device of this invention, in accordance with the patent statutes, changes may be made in the illuminated colored display device without actually departing from the true spirit and scope of this invention.

The appended claims are intended to cover all such changes and modifications which fall within the true spirit and scope of this invention.

What is claimed is:

1. An illuminated decorative device comprising:

a base;

a source of illumination supported on said base;

a first translucent member supported on said base, said first translucent member having a pattern formed thereon of at least two colors, said first translucent member surrounding said source of illumination;

a second translucent member supported on said base, said second translucent member having a pattern formed thereon of at least two colors, said second translucent member surrounding said first translucent member;

a third translucent member supported on said base surrounds said second translucent member, said third translucent member is formed with magnifying and reduction portions; and

a drive system supported on said base, said drive system moving said first translucent member with respect to said base, said drive system moving said second translucent member with respect to said base and with respect to said first translucent member, whereby the illumination from said source of illumination as observed through said third translucent member is a varying pattern of colors, shapes and magnification thereof depending upon the relative positions of said first, second and third translucent members with respect to each other.

2. The illuminated decorative device of claim 1, wherein said first and second translucent members are of a generally cylindrical shape, with said second translucent member being of a larger diameter than the first translucent member.

3. The illuminated decorative device of claim 1, wherein said first and second translucent members are of a frustum shape, with said second translucent member being of a larger diameter than the first translucent member.

6

4. The illuminated decorative device of claim 1, wherein said first translucent member has a pattern formed thereon of two different colors.

5. The illuminated decorative device of claim 1, wherein one of said first and second translucent members has a pattern formed thereon by two transparent colored portions and a clear portion, with portions of said two colors overlying each other.

6. The illuminated decorative device of claim 1, wherein said translucent members are formed of transparent colorless base, with said pattern of transparent colors being applied thereto.

7. The illuminated decorative device of claim 1, wherein a first end of said third translucent member is supported on said base, and a cover is secured to a second end of said third translucent member.

8. The illuminated decorative device of claim 1, wherein said first, second, and third translucent members are of a generally cylindrical shape, with said second translucent member being of a larger diameter than the first translucent member and the third translucent member being of a larger diameter than the second translucent member.

9. The illuminated decorative device of claim 1, wherein said first, second, and third translucent members are of a frustum shape, with said second translucent member being of a larger diameter than the first translucent member and the third translucent member being of a larger diameter than the second translucent member.

10. The illuminated decorative device of claim 1, wherein said drive system causes said first translucent member to move in a first direction and said second translucent member to move in a direction opposite said first direction.

11. The illuminated decorative device of claim 10, wherein said drive system includes first and second counter rotating turntables, said first turntable supporting said first translucent member and said second turntable supporting said second translucent member.

12. The illuminated decorative device of claim 1, wherein said source of illumination is electrically energized.

13. A decorative lamp comprising:

a base;

a drive system housed in said base;

an illumination source supported on said base;

a first translucent member having portions of different colors surrounds said illumination source and is supported on said base;

a second translucent member having portions of different colors surrounds said first translucent member and is supported on said base; and

a third translucent member surrounding said second translucent member and is supported on said base. Said third translucent member has magnifying portions through which said illumination passes, said drive system causing said first and second translucent members to move with respect to each other, and with respect to said base and said third translucent member, whereby the color and pattern of the illumination emitted through said third translucent member is of a changing pattern, color and magnification thereof when observed from a fixed position spaced from the lamp.

*  *  *  *  *

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RABBIT TANAKA CORPORATION, USA      )
  a Texas corporation, and               )
RABBIT TANAKA CORPORATION, LTD.      )      No. 08 CV 1455
  a Hong Kong corporation,             )
                                   )
              Plaintiffs,    )
                                     )      Judge Kendall
           v.                 )
                                   )
WALGREEN CO., an Illinois corporation, and      )      Magistrate Judge Nolan
TRADEWINDS INTERNATIONAL ENTERPRISES, INC.,    )
  a California corporation,            )
                                   )
             Defendants.    )

## DECLARATION OF CATHRINE LOCSIN, SUPPORTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

Declarant is President of Plaintiff Rabbit Tanaka Corporation, USA ("Tanaka USA"), residing and working in Dallas, Texas. She is over the age of 21 and makes the following statements upon her own personal knowledge and information.

1.      Affiant is and has at all relevant times been in overall charge of the distribution in the USA of the Virtual Vision products of Rabbit Tanaka Corporation, Ltd. ("Tanaka"), my company's parent and the supplier to us of such products.

2.      Tanaka USA has found our line of Virtual Vision waterless aquarium and related products (using other animals and figures) to be among its best sellers. The "Mini Virtual Vision" product of Ex. D to the Motion is one example in that line of products.

3.      Tanaka USA has distributed its patented line of products through many stores in the USA, including Spencer Gifts, Mijers, Dillards, QVC, Target, Hastings, ShopCo, Lamps Plus, Value City Stores, J. C. Penny, Go Glow Ltd., Home Base, K. B. Toys, and Linens N

Things. All these stores report healthy demand for the patented products, and they advise me when they find knock-off products sold by competing retailers or offered by importers' representatives.

4.    Tanaka USA has, through and with the advice of its outside patent counsel in Chicago, issued cease and desist demands to many distributors and retailers who have been found to carry infringing products such as waterless aquariums that have structures infringing on our patent rights. These include Target Stores, Kohls, Holmes, Image Maker Inc., Michael's Stores, Rose Art, and Zany Brainy.

5.    Each of the stores and distributors named in paragraph 4 above has stopped importing and selling infringing products on our counsel's demand, and each has paid money damages to Tanaka USA for the infringing devices sold up to the time of stopping such sales. Amounts paid are confidential, but monies were paid in each instance.

6.    Defendants' infringing "Living Aquarium" product is inferior to Tanaka's virtual Vision products. Its circular interior lamp or bulb is visible through the thin, lightly colored "coral reef" panel. Its outer lens provides minimal magnification and reduction of the passing images, reducing (but not eliminating) the "swimming" effect provided as a part of the invention. The screens of Defendants' device rotate in the same direction, not in opposite directions as in Tanaka's Virtual Vision products. Sale of the Defendants' products thus not only infringes Tanaka's '097 patent but impacts negatively the goodwill that we have built up in our Virtual Vision products.

7.    I am prepared to testify under penalties of perjury to the above facts in open Court. Executed this 13th day of March, 2008, in Dallas, TX

Catherine Locsin

Cathrine Locsin, President
Rabbit Tanaka Corporation, USA

# Exhibit C

Exhibit C.doc





# Exhibit D





# Exhibit E

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION
Edward O'Connor, Esq. (State Bar. No. 123398)
Becky V. Christensen, Esq. (State Bar No. 147013)
Craig McLaughlin, Esq. (State Bar No. 182876)
1920 Main Street, Suite 150
Irvine, California 92614
Telephone: (949) 851-5000
Facsimile: (949) 851-5051
E-mail: efo@eclipsegrp.com
E-mail: bvc@eclipsegrp.com
E-mail: cml@eclipsegrp.com



ATTORNEYS FOR PLAINTIFF
TRADEWINDS INTERNATIONAL ENTERPRISES INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TRADEWINDS INTERNATIONAL ENTERPRISES, INC., a California corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>RABBIT TANAKA CORPORATION, LTD., a Hong Kong corporation, and RABBIT TANAKA CORPORATION, USA, a Texas corporation,<br>                    Defendants. | Case No.: **CV08-01334 ODW (JTLx)**<br><br>COMPLAINT FOR:<br>1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF UNITED STATES PATENT SERIAL NO. 5,685,097; AND<br>2) FALSE MARKING UNDER 35 U.S.C. § 292.<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, TRADEWINDS INTERNATIONAL ENTERPRISES, INC. ("Tradewinds"), files this Complaint against RABBIT TANAKA CORPORATION, LTD. and RABBIT TANAKA CORPORATION, USA ("Defendants") showing as follows:

## INTRODUCTION

1.    This is an action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.*, for a declaration that Tradewinds' Animated Ocean Lamp products do not infringe United States Patent No. 5,685,097 (the '097 Patent), titled "Illuminated Colored Display Device", issued by the United States Patent & Trademark Office to Defendants on November 11, 1997.

2.    This is also an action brought under the False Marking Statue, the United States Patent Act, 35 U.S.C. § 292.

## THE PARTIES

3.    Plaintiff TRADEWINDS is a California corporation with its principal place of business located at 432 North Canal Street, Suite 2, South San Francisco, CA 94080.

4.    Upon information and belief, Defendant RABBIT TANAKA CORPORATION, LTD. is a Hong Kong corporation with its principal place of business located at 18 Ka Yip Street, MP Industrial Centre, Block A, 7/F, Sui Sai Wan, H.K. and Defendant RABBIT TANAKA CORPORATION, USA is a Texas corporation with its principal place of business located at 5925 Lovell Avenue, Fort Worth, TX 76107.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a), 2201 and 2202, and 35 U.S.C. § 292.

6.    Upon information and belief, Defendants are doing business in this judicial district and are subject to personal jurisdiction in this judicial district.

7.    Upon information and belief, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendants regularly engage in business in this judicial district and regularly solicit business in this judicial district, and derive substantial revenue from goods sold and used in this judicial district.

## FACTS GIVING RISE TO THIS ACTION

8.    Tradewinds distributes products in California including an Animated Ocean Lamp under the Living Aquarium brand name.  True and correct copies of photographs of the Animated Ocean Lamp are attached hereto as Exhibit "A".

9.    Upon information and belief, Defendants designs, develops, manufactures, and markets entertainment and novelty lighting products, including a Virtual Vision product for sale in the United States.   Upon information and belief, Defendants distributes their products throughout the United States, by and through its United States office in Fort Worth, Texas.

10.    Upon information and belief, Defendants have been selling and distributing a Virtual Vision product in the stream of commerce of the United States, including California, known as a Salt Water Fish Virtual Lamp.  True and correct copies of photographs of the Salt Water Fish Virtual Lamp advertised on the Spencer's online store are attached hereto as Exhibit "B".

11.    Upon information and belief, Defendants have marked the Salt Water Fish Virtual Lamp with the '097 Patent.  True and correct copies of

photographs of the Salt Water Fish Virtual Lamp showing the marking of the '097 Patent are attached hereto as Exhibit "C". Additionally attached is a true and correct copy of the '097 Patent hereto as Exhibit "D".

12.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamps are sold in numerous retail outlet stores including Spencer's stores throughout the United States, including throughout California.

13.    On December 21, 2007, Defendants' counsel wrote a cease and desist letter to Walgreens Co. ("Walgreens") regarding the sales of the Animated Ocean Lamp (letter attached hereto as Exhibit "E"). In the cease and desist letter, Defendants specifically identified the '097 Patent and alleged that Walgreen's Animated Ocean Lamp, identified as WIC # 544 773, is an "infringing copy of our client's 'Virtual Vision' product." Defendants' counsel further indicated in the cease and desist letter that "[o]ur client has instructed us to prepare a complaint against you, your supplier, T.W.I.E., and your customers for filing with the appropriate United States Federal District Court charging Walgreens and other entities within the United States ... with patent infringement of Rabbit Tanaka's patent and intellectual property rights." T.W.I.E. is the abbreviation for Tradewinds. Additionally, the cease and desist letter states that "[if] we do not receive an immediate indication of your voluntary compliance, we intend to proceed with the filing of the complaint with the International Trade Commission and the Customs Service and against you and your customers in Federal District Court ..."

14.    Tradewinds has a defense and indemnification agreement with Walgreens and has confirmed the obligation to Walgreens.

15.    On January 21, 2008, Tradewinds' counsel responded to Defendants' cease and desist letter stating the reasons for non-infringement of the '097 Patent, attached hereto as Exhibit "F". These reasons included the nature of the invention that is described in the '097 Patent as a display device

which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer.  Upon information and belief, these changing colors are the result of light passing through consecutive different colored areas of the two translucent members.  Tradewinds' product does not produce a visual effect of changing colors as described in the '097 Patent.

16.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamp also does not produce a visual effect of changing colors as described in the '097 Patent.

## FIRST CAUSE OF ACTION

### DECLARATION OF NON-INFRINGEMENT OF THE '097 PATENT

17.    Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

18.    There is an actual dispute between Defendants and Tradewinds as to whether the Animated Ocean Lamps, its design, manufacture, sales, offers for sale and importation into the United States infringes the '097 Patent.

19.    Tradewinds is entitled to a declaratory judgment that its design, manufacture, sale, offers for sale and importation into the United States of its Animated Ocean Lamps does not infringe or violate the '097 Patent.

## SECOND CAUSE OF ACTION

### DECLARATION OF FALSE MARKING UNDER 35 U.S.C. § 292

20.    Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

21.    Defendants' Salt Water Fish Virtual Lamp is not covered by the '097 Patent.

22.    Tradewinds is entitled to a judgment that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent.

## THIRD CAUSE OF ACTION

DECLARATION OF FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

23.    Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

24.    Defendants' Salt Water Fish Virtual Lamp, which has been sold through the stream of commerce in the United States including California, is not covered by the '097 Patent.

25.    Tradewinds is entitled to a judgment that Defendants falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tradewinds prays that judgment be entered against Defendants:

1.    Trial by jury is demanded on all issues so triable as permitted by F.R.C.P. 38(b);

2.    A declaration that the Animated Ocean Lamps manufactured for Tradewinds does not infringe, either directly, indirectly, any valid and enforceable claim of the '097 Patent.

3.    A declaration that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent.

4.    A declaration that Defendants falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent.

5.    An Order providing that Defendants and all of their officers, agents, servants, employees, attorneys, privies, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from making

any commercial or promotional communication, publication, distribution, dissemination, broadcast or otherwise public dissemination of any false or misleading representations that Animated Ocean Lamps or its design constitutes an infringement of the '097 Patent.

6.    An assessment against Defendants of the costs of this action, including Tradewinds' reasonable attorneys' fees.

7.    Such other relief as is deemed just.


                                THE ECLIPSE GROUP LLP
                                O'CONNOR CHRISTENSEN & MCLAUGHLIN
                                TRIAL DIVISION


Dated: February 26, 2008
                                _____
                                Edward F. O'Connor, Esq.
                                Becky V. Christensen, Esq.
                                Craig McLaughlin, Esq.
                                Attorneys for Plaintiff
                                TRADEWINDS INTERNATIONAL
                                ENTERPRISES INC.

## DEMAND FOR JURY TRIAL

Plaintiff TRADEWINDS demands a trial by jury of all issues properly triable by jury in this action.

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION

Dated: February 26, 2008

Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
Attorneys for Plaintiff
TRADEWINDS INTERNATIONAL
ENTERPRISES INC.

# EXHIBIT A





# EXHIBIT B

Case 2:08-cv-01334-ODW-JTL    Document 1    Filed 02/27/2008    Page 12 of 17





**FREE SHIPPING**
on orders over $40 >>

SEARCH



HACKER SAFE

hot searches  |  join the email list  |  my account

ass kickin' deals  |  gift cards  |  0 items in my shopping cart  |  checkout

## Salt Water Fish Virtual Lamp



SOLD OUT



Who says a saltwater tank is hard to care for? Enjoy your very own aquarium without having any fish die! These little swimmers are as low maintenance as they come... Just plug this water world in and watch the fishies swim around the lamp light!

$24.99  SALE $16.98

Be the first to review this product. Write a Review

PLAYBOY MERCHANDISE

BAGS

MESSENGERS & BACKPACKS

ACCESSORIES

HATS

**ROOM DECOR**

JEWELRY

APPAREL

COSTUMES













Case 2:08-cv-01334-ODW-JTL   Document 1   Filed 02/27/2008   Page 13 of 17

home    what's new    girls    guys    music    décor    fun & games    luv stuff    horror & fantasy    my spencer's    sale    reviews

privacy policy    my account    guest service    store locator    about us    affiliates    the underground    job opportunities    site map

copyright © 2008 spencer gifts, llc. all rights reserved.

# EXHIBIT C





# EXHIBIT D

Case 2:08-cv-01334-ODW-JTL     Document 1     Filed 02/27/2008     Page 17 of 17

US005685097A

# United States Patent [19]

## Marinov

[11] Patent Number: 5,685,097

[45] Date of Patent: Nov. 11, 1997

[54] **ILLUMINATED COLORED DISPLAY DEVICE**

[75] Inventor: **Daniel Marinov**, Quarry Bay, Hong Kong

[73] Assignee: **Haggerty Enterprises, Inc.**, Chicago, Ill.

[21] Appl. No.: **575,255**

[22] Filed: **Dec. 20, 1995**

[51] Int. Cl.⁶ ............................................. G09F 13/32
[52] U.S. Cl. .......................... 40/431; 362/283; 362/811
[58] Field of Search .......................... 40/431, 436, 444;
362/811, 283, 284, 336

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 99,235 | 4/1936 | Wolfson . | |
| D. 102,868 | 1/1937 | Barrett . | |
| 1,099,879 | 6/1914 | Hutchings | 40/431 |
| 1,178,732 | 4/1916 | Koken | 40/431 |
| 1,612,362 | 12/1926 | Decker | 40/431 |
| 1,652,779 | 12/1927 | Gillinder | 362/356 |
| 1,871,073 | 8/1932 | Walker | 40/431 |
| 2,608,779 | 9/1952 | Joy | 40/431 |
| 2,702,850 | 2/1955 | Harling | 362/336 |
| 2,867,716 | 1/1959 | Ream | 362/811 X |
| 3,179,791 | 4/1965 | Mole | 362/806 X |
| 3,686,494 | 8/1972 | Naylor | 362/811 X |
| 3,791,058 | 2/1974 | Mollica | 362/811 X |
| 3,964,194 | 6/1976 | Gageler | 362/811 X |
| 5,065,289 | 11/1991 | Teng | 362/269 X |
| 5,339,224 | 8/1994 | Woehler | 362/35 |
| 5,394,309 | 2/1995 | Brown | 362/806 X |
| 5,442,524 | 8/1995 | Farmer | 362/284 X |

*Primary Examiner*—Joanne Silbermann
*Attorney, Agent, or Firm*—Keck, Mahin & Cate

[57] **ABSTRACT**

An illuminated colored display device having a pair of counter rotating translucent members bearing colored patterns thereon, and a light distorting, magnifying and reducing, member surrounding a source of light, such that when viewed from a fixed location the display device a changing display of colors and shapes is observed.

**13 Claims, 3 Drawing Sheets**



# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RABBIT TANAKA CORPORATION, USA<br>   a Texas corporation, and<br>RABBIT TANAKA CORPORATION, LTD.<br>   a Hong Kong corporation,<br><br>                    Plaintiffs,<br><br>        v.<br><br>WALGREEN CO., an Illinois corporation, and<br>TRADEWINDS INTERNATIONAL ENTERPRISES, INC.,<br>   a California corporation,<br><br>                  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08 CV 1455<br><br><br>Judge Kendall<br><br>Magistrate Judge Nolan |

## [PROPOSED] TEMPORARY RESTRAINING ORDER

Plaintiffs have moved for entry of a Temporary Restraining Order to stop Defendants from violating Plaintiffs' patent and trade dress and other rights, and from prosecuting a parallel declaratory judgment action filed by Defendant Tradewinds in California. A hearing has been held commencing at 4:00 pm on March 13, 2008, in open Court, attended by counsel for Plaintiffs. Defendants' counsel has been notified by e-mail of this hearing and of the papers submitted in support of the Motion.

Being duly informed of the facts and in view of the law pertinent to the issues presented, the Court finds in favor of Plaintiffs and grants a Temporary Restraining Order against Defendants and each of them, as follows:

1.      Defendants Walgreen Co. and Tradewinds International, and its and their officers, agents, employees, and others in concert with it or them shall immediately cease from infringing Plaintiffs' patent no. 5,685,097 and the trade dress of Plaintiffs' "Virtual Vision - Salt Water

Fish" product by Defendants' advertising, marketing, offering for sale, and sale in the United States of their "Living Aquarium - Animated Ocean Lamp" product (Ex. C to the Motion).

2. Defendant Tradewinds shall immediately either dismiss under F.R.Civ.P. 41(a)(1) or move to transfer to this Court under 28 U.S.C. § 1404(b) its Declaratory Judgment suit, no. CV 08-1334 ODW (JTLx), filed in the U.S. District Court for the Central District of California on February 27, 2008, in favor of this suit on the merits and for the convenience of the parties and witnesses.

3. Plaintiffs shall post a $5000.00 cash bond to the registry of this Court to secure Defendants against any reversal of the Court's preliminary finding of liability for patent and trade dress infringement on Plaintiffs' rights. No bond is required for the dismissal or transfer order.

ENTER, this ___ day of March, 2008:


_____
Virgina M. Kendall
U.S. District Judge