UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| )<br>)<br>Rabbit Tanaka Corporation, USA a )<br>   Texas corporation, and )<br>Rabbit Tanaka Corporation, Ltd. a )<br>   Hong Kong corporation, )<br>          **Plaintiffs** )<br>)<br>      v. )<br>)<br>Walgreen Co., an Illinois )<br>   corporation, and )<br>Tradewinds International )<br>   Enterprises, Inc. a California )<br>   corporation, )<br>          **Defendants** )<br>) | **Case No.** 08cv-1455<br><br>Hon. Virginia M. Kendall |

## NOTICE OF MOTION

TO:    See Attached Service List

     **PLEASE TAKE NOTICE** that on **March 24, 2008 at 11:00 am** or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Virginia M. Kendall, Courtroom 2319,** United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other Judge who may be sitting in her place and stead and hearing motions, and shall than and there present the **MOTION OF DEFENDANTS TO STAY, DISMISS, OR TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA,** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading.

     **AT WHICH TIME AND PLACE** you may appear if you so see fit.

Respectfully submitted,

THE ECLIPSE GROUP LLP

Dated:  March 19, 2008                    /s/ Gregory B. Gulliver
                                          Gregory B. Gulliver, Esq.

Enrique Perez
THE ECLIPSE GROUP LLP                     Attorneys for Defendants
100 Tri-State International               Walgreens Co. and
Suite 128                                 Tradewinds International Enterprises, Inc.
Lincolnshire, IL 60069
Phone: (847)282-3550
Fax: (847)574-8035
eperez@eclipsegrp.com

Edward F. O'Connor
O'Connor Christensen and McLaughlin
1920 Main Street
Suite 150
Irvine, California 92614
Phone:  (949) 851-5000
Fax:  (949) 851-5051
efo@eclipsegrp.com

## CERTIFICATE OF SERVICE

Martha Mezyk certifies that he caused to be served a true copy of the above and foregoing notice upon the attached Service List in the manner and on Wednesday, March 19, 2008.

_____
Martha Mezyk


**VIA ELECTRONIC MAIL**
Robert J. Schneider
John R. Crossan
Counsel for Plaintiff
**Rabbit Tanaka Corporation, USA**
Champman and Cutler LLP
111 West Monroe Street
Chicago, IL 60603
Fax: (312) 803-5299
Telephone: (312)845-3919
bschneid@chapman.com
crossan@chapman.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| Rabbit Tanaka Corporation, USA a Texas corporation, and Rabbit Tanaka Corporation, Ltd. a Hong Kong corporation, **Plaintiffs** | ) ) ) ) ) ) ) | **Case No.** 08cv-1455<br><br>Hon. Virginia M. Kendall |
| v. | ) ) ) | |
| Walgreen Co., an Illinois corporation, and Tradewinds International Enterprises, Inc. a California corporation, **Defendants** | ) ) ) ) ) ) ) ) | Magistrate Judge Nolan |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO STAY, DISMISS, OR TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA**

**INTRODUCTION**

Defendants Tradewinds International Enterprises, Inc. ("Tradewinds") and Walgreen Co.

("Walgreen"), hereby move this Court for an order to stay, dismiss, or transfer this case to the

Central District of California, where declaratory judgment plaintiff Tradewinds had first-filed the

action on February 27, 2008.

## FACTUAL BACKGROUND

As was noted in Defendants' opposition to Plaintiffs' March 13, 2008, "motion" for temporary restraining order[1], counsel for Plaintiffs have attempted to circumvent the jurisdiction of the Central District of California where Defendant Tradewinds had previously filed a declaratory judgment action on February 27, 2008, seeking declaration of non-infringement of the very same patent Plaintiff threatened and now alleges in the instant complaint[2] that Tradewinds and its customer, Walgreen, have infringed by way of offering for sale and selling an "Animated Ocean Lamp" under the "Living Aquarium" brand name. Plaintiff's counsel knew about the first-filed case since it was noted in Plaintiffs' "motion" and a copy of Tradewinds' Complaint in the California action was included as an attached exhibit to the motion papers. In their motion papers, Plaintiffs, however, conveniently omitted Exhibits E & F of Tradewinds' Complaint. A true copy of the entire Tradewinds Complaint, which has been served[3], is attached hereto as **Exhibit 1**.

Since then, Tradewinds and Walgreen filed an Amended Complaint in the California court reciting the same three counts as in the Complaint and adding a count for unenforceability and invalidity of the patent due to the patentee's inequitable conduct of failing to disclose pre-

---

[1]     The "motion" for temporary restraining order was denied and a status conference has been set for March 24, 2008, to set a briefing schedule for hearing on preliminary injunction. Before a preliminary injunction motion is entertained, however, this Court should order the case dismissed without prejudice or stayed in deference to the court of the first filed action. Plaintiffs have not demonstrated sufficient concern about litigating the case in Illinois because, to date, they have not filed any motion seeking to dismiss, stay or transfer the California action.

[2]     Although it is assumed Plaintiffs filed their complaint in this Court on or about March 11, 2008, to date, neither Defendant has been served with Plaintiffs' summons or complaint and thus Defendants appear specially here. Lack of service is alone sufficient reason to decline to proceed with the preliminary injunction motion.

[3]     Only Rabbit Tanaka Corp. USA has been served. Even though both Rabbit Tanaka entities filed suit in the instant case, Plaintiff's counsel has nonetheless refused to accept service of either complaint on behalf of Rabbit Tanaka Corp. Ltd. in the California action.

application sales. A copy of the Amended Complaint is attached hereto as **Exhibit 2** without its exhibits since they are the same as filed in Tradewinds' Complaint.

Exhibit E of Tradewinds Complaint is a copy of a cease and desist letter from Plaintiffs' counsel to Defendant Walgreen, dated December 21, 2007, accusing Walgreen of infringement of U.S. Patent No. 5,685,097 ("the '097 Patent"), an "Illuminated Colored Display Device." The letter was stamped "EXTREMELY URGENT." Page two of the letter begins with a threat to sue Walgreen and "T.W.I.E." (which abbreviated is Defendant Tradewinds International Enterprises, Inc.) in the Federal District Court. In the next paragraph, the letter states: "If we do not receive an immediate indication of your voluntary compliance, we intend to proceed with the filing of the complaint with the International Trade Commission and the Customs Service and against you and your customers in Federal District Court, and take such other action as may be appropriate for Rabbit Tanaka to protect its rights . . . ." The letter concluded with a demand that to avoid litigation, Walgreen shall "remove these products from your shelves immediately and contact me, other wise I will proceed as indicated above." With the assertion of infringement, an actual controversy was born.

After Tradewinds was apprised of the cease and desist letter, Tradewinds' counsel forwarded a well-reasoned response, dated January 21, 2008, denying infringement and setting forth reasons why. By strenuously disagreeing with the assertion of infringement and communicating that disagreement, an actual controversy was confirmed. Moreover, neither Tradewinds nor Walgreen had indicated any compliance with Defendants' demands and were therefore left with the reasonable belief that Defendants would carry out their express threat to file suit.

3

On February 27, 2008, Tradewinds filed a declaratory judgment action in the Central District of California and indicated in its Complaint, as well as in the Amended Complaint, that it is protecting its customer, Walgreen, by indemnification. In other words, the fight here is primarily between Tradewinds, a California corporation, and the same two parties on the opposing side of both complaints - the two Rabbit Tanaka entities, one a Texas corporation and the other a corporation of Hong Kong - neither of which has a principal place of business in Illinois or is likely to have any witnesses there. In fact, the allegations of Plaintiffs' complaint do not indicate any connection by Rabbit Tanaka Corp., Ltd., the Hong Kong entity, to Illinois whatsoever. There is also no specific allegation that Rabbit Tanaka Corporation, USA (the Texas entity) does any business in Illinois.

Plaintiffs' conduct is blatantly apparent. They simply are attempting to create sufficient inertia in this Court to wrest jurisdiction away from the court in California which is entitled to jurisdiction pursuant to the Declaratory Judgment Act and the long followed first-to-file rule. Defendants request that this case be dismissed without prejudice, stayed, or transferred to the Central District of California where it was first filed and where it is the more convenient of the two fora.

Indeed, without objection from Walgreen, it is more convenient for all parties to litigate in California. It is certainly more convenient for Tradewinds and its counsel. Moreover, the court in California is geographically juxtapositioned between Hong Kong and Texas making it more convenient for them as well.

Furthermore, it is Defendants' counsel's experience that U.S. District Court's have the power, and have used it, to order party witnesses from foreign countries to the U.S. forum for discovery purposes. District Courts have applied such power with substantial force to off-shore

4

parties who seek damages, as here, but whose laws prevent discovery. Whether being forced to travel to Hong Kong or whether witnesses for the Hong Kong entity would travel to the United States, it could hardly be argued that Illinois would be a more convenient forum than the Central District of California. As applied to the Texas party and its witnesses, California is nearly as close, but also offers more favorable year-round travel conditions than does Illinois and therefore is more likely to result in fewer scheduling snags for the parties, the witnesses and the court, resulting in a savings in resources for all involved.

## LEGAL STANDARDS

The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "A district court, when deciding whether to exercise its discretion, should decide whether hearing the case would 'serve the objectives for which the Declaratory Judgment Act was created.'" *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 2008 U.S. App. LEXIS 4387, *11 (Fed. Cir. 2008) (quoting *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996)). "When these objectives are served, dismissal is rarely proper." *Micron Tech.*

"The general rule favors the forum of the first-filed action, whether or not it is a declaratory action." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). Although there are exceptions to the general rule, "[t]here must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech v. Eli Lilly & Co.*, 998 F.2d at 938. "We prefer to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and

effective disposition of disputes, require otherwise." *Genentech v. Eli Lilly & Co.*, 998 F.2d at 937.

A few courts where the second action was filed have been faced with the situation presented here – the defendant in the second action seeking a dismissal, stay or transfer of the second filed action. "The threshold issue to be decided, however, is not whether the first-to-file rule should apply, but which of the two courts in which the 'mirror image' actions are pending should decide whether it will be applied." *Kimberly-Clark Corp. v. McNeil-PPC, Inc.*, 260 F. Supp. 2d 738, 740 (D. Wis. 2003). As a receptacle for the second-filed action, this Court is faced with the same issue. Accordingly, in the interest of comity and the purposes of the Declaratory Judgment Act, this Court should defer to the court of the first filed action. The few courts that have been faced with this issue have decided to either stay the case or dismiss it without prejudice. This Court should do so too.

> Notwithstanding the fact that the plaintiff in the case before it (and defendant in the earlier filed action) had not even sought dismissal of the other action, the court in *Daimler-Chrysler* held that it was for the court with the first-filed case to decide which should proceed. In so ruling, the court noted that there existed a body of case law supporting such a rule, and it 'found no case in which a court that has considered the issue has concluded that the second-filing court should - as I have been called on to do - arrogate that decision to itself.'" *Kimberly-Clark Corp. v. McNeil-PPC, Inc.*, 260 F. Supp. 2d 738, 740 (D. Wis. 2003) quoting *Daimler-Chrysler Corporation v. General Motors Corp.*, 133 F. Supp.2d 1041, 1044 (N.D. Ohio 2001) and staying second filed action.

6

Other courts have dismissed the second filed actions without prejudice. "The concern manifestly is to avoid the waste of duplication, to avoid rulings may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Asso. v. ILA Deep Sea Local 24, etc.*, 751 F.2d 721, 729 (5th Cir. 1985) (citations omitted). "In particular, '[a] court may . . . in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere.'" *Id.* quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155, 87 S. Ct. 1507, 1519, 18 L. Ed. 2d 681 (1967). See *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir.1976); *National Health Federation v. Weinberger*, 518 F.2d 711, 712 (7th Cir.1975); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (affirming dismissal without prejudice).

## ARGUMENT

Frequently, a party who takes sufficient initiative to actually file a separate action for infringement after a declaratory action for non-infringement had previously been filed in another court will also reflexively file a motion to dismiss or transfer the first filed action for lack of declaratory judgment jurisdiction. Perhaps Plaintiffs have not done so here since they recognize they would have little chance of prevailing given the current law and facts. Plaintiffs prefer simply to improperly press the instant case forward and ignore the action first filed in California. In the interest of comity, and the purposes of the Declaratory Judgment Act, this Court should defer to the court in California until that court, if ever, decides against jurisdiction – an unlikely scenario to be sure. *Kimberly-Clark*, etc..

The phrase "case of actual controversy" "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771,

7

166 L. Ed. 2d 604 (2007). The Federal Circuit's "reasonable apprehension test" to determine declaratory judgment jurisdiction was rejected by the Supreme Court in *MedImmune*.

"The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable apprehension of suit test." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) quoting *SanDisk Corp v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007). "As a result, our post-*MedImmune* decisions, while not attempting to define the outer boundaries of declaratory judgment jurisdiction, have made clear that a declaratory judgment plaintiff does not need to establish a reasonable apprehension of a lawsuit in order to establish that there is an actual controversy between the parties." *Sony,* 497 F.3d at 1284 and citing to *SanDisk*, 480 F.3d at 1380-81; *Teva Pharms. USA, Inc. v. Norvartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007).

"Instead of fashioning a precise test, the Supreme Court has required only that the dispute be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Sony,* 497 F.3d at 1283 quoting *MedImmune*, 127 S. Ct. at 771.

The Supreme Court in *MedImmune* held that a licensee was not required to stop royalty payments to establish a controversy within the meaning of Article III. This modern trend liberally granting declaratory judgment jurisdiction to declaratory judgment plaintiffs where controversy can be found continues in the Federal Circuit, where its own[4] jurisprudence will

---

[4]     "The question of whether a properly brought declaratory action to determine patent rights should yield to a later-filed suit for patent infringement raises the issue of national uniformity in patent cases, and invokes the special obligation of the Federal Circuit to avoid creating opportunities for dispositive differences among the regional circuits." *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (declining to apply Seventh Circuit test to declaratory judgment jurisdiction in patent cases). Tossing in a trade dress claim, for example, would not alter application of Federal Circuit law and its preference to decide jurisdictional issues in patent cases.

apply in conformance with Supreme Court's view of the Declaratory Judgment Act to determine declaratory judgment jurisdiction in cases involving patents, rather than the law of the regional circuit. "[T]he now more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech.* at *12, citing a number of Federal Circuit cases following the Supreme Court's lead in *MedImmune* and reversing lower courts that refused to grant declaratory judgment jurisdiction.

Factually, Plaintiffs' counsel's December 21, 2007, "extremely urgent" letter threatening to sue Walgreen and Tradewinds for infringement should be sufficient to establish a controversy between the parties. "If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead Indus. Water Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988).

Defendants' counsel letter to Plaintiffs denying infringement on January 21, 2008, merely confirms the actual and concrete controversy. By denying infringement, the message was clear to Plaintiffs that Defendants believed they were entitled to carry on offering and selling the accused device. Neither Tradewinds nor Walgreen agreed to the demands of Plaintiffs. "[W]here a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk*, 480 F.3d at 1381. Indeed, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."

9

*SanDisk*, 480 F.3d at 1381.  A party "need not 'bet the farm,' so to speak, and risk a suit for infringement by cutting off licensing discussions n3 and continuing in the identified activity before seeking a declaration of its legal rights."  *SanDisk*, 480 F.3d at 1382.  In *MedImmune* too, there was no requirement for declaratory judgment plaintiff to take additional action.

Given the stated positions of the parties, the controversy was definite and concrete and Tradewinds had every right to file its declaratory judgment action.  The facts alleged, under the circumstances of the instant case, "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Sony,* 497 F.3d  at 1283 quoting *MedImmune*, 127 S. Ct. at 771.

As the facts show, it would be extremely unlikely that "considerations of judicial and litigant economy, and the just and effective disposition of disputes" would not require otherwise here. *Genentech v. Eli Lilly & Co.*, 998 F.2d at 937.  Indeed, under the circumstances, California presents the most convenient location for the parties *in toto* and to proceed there rather than in this Court will conserve rather than waste judicial resources.

## CONCLUSION

For all the above reasons, this Court should grant the motion by dismissing the case

without prejudice, stay the case, or transfer it to the Central District of California.

Respectfully submitted,

THE ECLIPSE GROUP, LLP.

Dated:   March 19, 2008                         /s/ Gregory B. Gulliver
                                                Gregory B. Gulliver, Esq.

Enrique Perez
THE ECLIPSE GROUP, LLP                          Attorneys for Defendants
100 Tri-State International                      Walgreens Co. and
Suite 128                                        Tradewinds International Enterprises, Inc.
Lincolnshire, IL 60069
Phone: (847)282-3550
Fax: (847)574-8035
eperez@eclipsegrp.com

Edward F. O'Connor
O'Connor Christensen and McLaughlin
1920 Main Street
Suite 150
Irvine, California 92614
Phone:  (949) 851-5000
Fax:  (949) 851-5051
efo@eclipsegrp.com

# EXHIBIT 1

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & McLAUGHLIN
TRIAL DIVISION
Edward O'Connor, Esq. (State Bar No. 123398)
Becky V. Christensen, Esq. (State Bar No. 147013)
Craig McLaughlin, Esq. (State Bar No. 182876)
1920 Main Street, Suite 150
Irvine, California 92614
Telephone: (949) 851-5000
Facsimile: (949) 851-5051
E-mail: efo@eclipsegrp.com
E-mail: bvc@eclipsegrp.com
E-mail: cml@eclipsegrp.com

ATTORNEYS FOR PLAINTIFF
TRADEWINDS INTERNATIONAL ENTERPRISES INC.

CONFORMED COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| TRADEWINDS INTERNATIONAL ENTERPRISES, INC., a California corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>RABBIT TANAKA CORPORATION, LTD., a Hong Kong corporation, and RABBIT TANAKA CORPORATION, USA, a Texas corporation,<br>                    Defendants. | Case No.:  **CV08-01334 ODW (JTLx)**<br><br>COMPLAINT FOR:<br>1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF UNITED STATES PATENT SERIAL NO. 5,685,097; AND<br>2) FALSE MARKING UNDER 35 U.S.C. § 292.<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiff, TRADEWINDS INTERNATIONAL ENTERPRISES, INC. ("Tradewinds"), files this Complaint against RABBIT TANAKA CORPORATION, LTD. and RABBIT TANAKA CORPORATION, USA ("Defendants") showing as follows:

## INTRODUCTION

1.     This is an action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.*, for a declaration that Tradewinds' Animated Ocean Lamp products do not infringe United States Patent No. 5,685,097 (the '097 Patent), titled "Illuminated Colored Display Device", issued by the United States Patent & Trademark Office to Defendants on November 11, 1997.

2.     This is also an action brought under the False Marking Statue, the United States Patent Act, 35 U.S.C. § 292.

## THE PARTIES

3.     Plaintiff TRADEWINDS is a California corporation with its principal place of business located at 432 North Canal Street, Suite 2, South San Francisco, CA 94080.

4.     Upon information and belief, Defendant RABBIT TANAKA CORPORATION, LTD. is a Hong Kong corporation with its principal place of business located at 18 Ka Yip Street, MP Industrial Centre, Block A, 7/F, Sui Sai Wan, H.K. and Defendant RABBIT TANAKA CORPORATION, USA is a Texas corporation with its principal place of business located at 5925 Lovell Avenue, Fort Worth, TX 76107.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a), 2201 and 2202, and 35 U.S.C. § 292.

6.     Upon information and belief, Defendants are doing business in this judicial district and are subject to personal jurisdiction in this judicial district.

7.     Upon information and belief, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Defendants regularly engage in business in this judicial district and regularly solicit business in this judicial district, and derive substantial revenue from goods sold and used in this judicial district.

## FACTS GIVING RISE TO THIS ACTION

8.     Tradewinds distributes products in California including an Animated Ocean Lamp under the Living Aquarium brand name.  True and correct copies of photographs of the Animated Ocean Lamp are attached hereto as Exhibit "A".

9.     Upon information and belief, Defendants designs, develops, manufactures, and markets entertainment and novelty lighting products, including a Virtual Vision product for sale in the United States.  Upon information and belief, Defendants distributes their products throughout the United States, by and through its United States office in Fort Worth, Texas.

10.     Upon information and belief, Defendants have been selling and distributing a Virtual Vision product in the stream of commerce of the United States, including California, known as a Salt Water Fish Virtual Lamp.  True and correct copies of photographs of the Salt Water Fish Virtual Lamp advertised on the Spencer's online store are attached hereto as Exhibit "B".

11.     Upon information and belief, Defendants have marked the Salt Water Fish Virtual Lamp with the '097 Patent.  True and correct copies of

photographs of the Salt Water Fish Virtual Lamp showing the marking of the '097 Patent are attached hereto as Exhibit "C". Additionally attached is a true and correct copy of the '097 Patent hereto as Exhibit "D".

12.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamps are sold in numerous retail outlet stores including Spencer's stores throughout the United States, including throughout California.

13.    On December 21, 2007, Defendants' counsel wrote a cease and desist letter to Walgreens Co. ("Walgreens") regarding the sales of the Animated Ocean Lamp (letter attached hereto as Exhibit "E"). In the cease and desist letter, Defendants specifically identified the '097 Patent and alleged that Walgreen's Animated Ocean Lamp, identified as WIC # 544 773, is an "infringing copy of our client's 'Virtual Vision' product." Defendants' counsel further indicated in the cease and desist letter that "[o]ur client has instructed us to prepare a complaint against you, your supplier, T.W.I.E., and your customers for filing with the appropriate United States Federal District Court charging Walgreens and other entities within the United States … with patent infringement of Rabbit Tanaka's patent and intellectual property rights." T.W.I.E. is the abbreviation for Tradewinds. Additionally, the cease and desist letter states that "[if] we do not receive an immediate indication of your voluntary compliance, we intend to proceed with the filing of the complaint with the International Trade Commission and the Customs Service and against you and your customers in Federal District Court …"

14.    Tradewinds has a defense and indemnification agreement with Walgreens and has confirmed the obligation to Walgreens.

15.    On January 21, 2008, Tradewinds' counsel responded to Defendants' cease and desist letter stating the reasons for non-infringement of the '097 Patent, attached hereto as Exhibit "F". These reasons included the nature of the invention that is described in the '097 Patent as a display device

which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer. Upon information and belief, these changing colors are the result of light passing through consecutive different colored areas of the two translucent members. Tradewinds' product does not produce a visual effect of changing colors as described in the '097 Patent.

16. Upon information and belief, Defendants' Salt Water Fish Virtual Lamp also does not produce a visual effect of changing colors as described in the '097 Patent.

## FIRST CAUSE OF ACTION

### DECLARATION OF NON-INFRINGEMENT OF THE '097 PATENT

17. Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

18. There is an actual dispute between Defendants and Tradewinds as to whether the Animated Ocean Lamps, its design, manufacture, sales, offers for sale and importation into the United States infringes the '097 Patent.

19. Tradewinds is entitled to a declaratory judgment that its design, manufacture, sale, offers for sale and importation into the United States of its Animated Ocean Lamps does not infringe or violate the '097 Patent.

## SECOND CAUSE OF ACTION

### DECLARATION OF FALSE MARKING UNDER 35 U.S.C. § 292

20. Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

21. Defendants' Salt Water Fish Virtual Lamp is not covered by the '097 Patent.

22. Tradewinds is entitled to a judgment that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent.

## THIRD CAUSE OF ACTION

DECLARATION OF FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

23.    Plaintiff Tradewinds re-alleges and incorporates by reference herein the allegations contained in paragraphs 1 through 16 of this Complaint.

24.    Defendants' Salt Water Fish Virtual Lamp, which has been sold through the stream of commerce in the United States including California, is not covered by the '097 Patent.

25.    Tradewinds is entitled to a judgment that Defendants falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Tradewinds prays that judgment be entered against Defendants:

1.    Trial by jury is demanded on all issues so triable as permitted by F.R.C.P. 38(b);

2.    A declaration that the Animated Ocean Lamps manufactured for Tradewinds does not infringe, either directly, indirectly, any valid and enforceable claim of the '097 Patent.

3.    A declaration that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent.

4.    A declaration that Defendants falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent.

5.    An Order providing that Defendants and all of their officers, agents, servants, employees, attorneys, privies, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from making

any commercial or promotional communication, publication, distribution, dissemination, broadcast or otherwise public dissemination of any false or misleading representations that Animated Ocean Lamps or its design constitutes an infringement of the '097 Patent.

6.    An assessment against Defendants of the costs of this action, including Tradewinds' reasonable attorneys' fees.

7.    Such other relief as is deemed just.

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION

Dated: February 26, 2008

Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
Attorneys for Plaintiff
TRADEWINDS INTERNATIONAL
ENTERPRISES INC.

## DEMAND FOR JURY TRIAL

Plaintiff TRADEWINDS demands a trial by jury of all issues properly triable by jury in this action.

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION


Dated: February 26, 2008

Edward F. O'Connor, Esq.
Becky V. Christensen, Esq.
Craig McLaughlin, Esq.
Attorneys for Plaintiff
TRADEWINDS INTERNATIONAL
ENTERPRISES INC.

# EXHIBIT A



# EXHIBIT B









hot searches | join the email list | my account

ass kickin' deals | gift cards | 0 items in my shopping cart | checkout

PLAYBOY
MERCHANDISE

BAGS

MESSENGERS &
BACKPACKS

ACCESSORIES

HATS

ROOM DECOR

JEWELRY

APPAREL

COSTUMES













## Salt Water Fish Virtual Lamp



SOLD OUT



Who says a saltwater tank is hard to care for? Enjoy your very own aquarium without having any fish die! These little swimmers are as low maintenance as they come... Just plug this water world in and watch the fishies swim around the lamp light!

$24.99  SALE $19.98

Be the first to review this product. Write a Review

home | what's new | girls | guys | music | décor | fun & games | luv stuff | horror & fantasy | my spencer's | sale | reviews

privacy policy | my account | guest service | store locator | about us | affiliates | the underground | job opportunities | site map

copyright © 2008 spencer gifts, llc. all rights reserved.

# EXHIBIT C





# EXHIBIT D



US005685097A

# United States Patent [19]

**Marinov**

[11] **Patent Number:** 5,685,097

[45] **Date of Patent:** Nov. 11, 1997

[54] **ILLUMINATED COLORED DISPLAY DEVICE**

[75] Inventor: **Daniel Marinov**, Quarry Bay, Hong Kong

[73] Assignee: **Haggerty Enterprises, Inc.**, Chicago, Ill.

[21] Appl. No.: **575,255**

[22] Filed: **Dec. 20, 1995**

[51] Int. Cl.$^6$ ..................................... **G09F 13/32**

[52] U.S. Cl. ........................ **40/431; 362/283; 362/811**

[58] Field of Search ........................... 40/431, 436, 444; 362/811, 283, 284, 336

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 99,235 | 4/1936 | Wolfson . | |
| D. 102,868 | 1/1937 | Barrett . | |
| 1,099,879 | 6/1914 | Hutchings | 40/431 |
| 1,178,732 | 4/1916 | Koken | 40/431 |
| 1,612,362 | 12/1926 | Decker | 40/431 |
| 1,652,779 | 12/1927 | Gillinder | 362/356 |
| 1,871,073 | 8/1932 | Walker | 40/431 |
| 2,608,779 | 9/1952 | Joy | 40/431 |
| 2,702,850 | 2/1955 | Harling | 362/336 |
| 2,867,716 | 1/1959 | Ream | 362/811 X |
| 3,179,791 | 4/1965 | Mole | 362/806 X |
| 3,686,494 | 8/1972 | Naylor | 362/811 X |
| 3,791,058 | 2/1974 | Mollica | 362/811 X |
| 3,964,194 | 6/1976 | Gugeler | 362/811 X |
| 5,065,289 | 11/1991 | Teng | 362/269 X |
| 5,339,224 | 8/1994 | Woehler | 362/35 |
| 5,394,309 | 2/1995 | Brown | 362/806 X |
| 5,442,524 | 8/1995 | Farmer | 362/284 X |

*Primary Examiner*—Joanne Silbermann
*Attorney, Agent, or Firm*—Keck, Mahin & Cate

[57] **ABSTRACT**

An illuminated colored display device having a pair of counter rotating translucent members bearing colored patterns thereon, and a light distorting, magnifying and reducing, member surrounding a source of light, such that when viewed from a fixed location the display device a changing display of colors and shapes is observed.

**13 Claims, 3 Drawing Sheets**





FIG. 2

FIG. 3



FIG. 4



## FIG. 5



## FIG. 6



5,685,097

# 1

## ILLUMINATED COLORED DISPLAY DEVICE

### BACKGROUND OF THE INVENTION

1. Field of the Invention

This invention relates to illuminated colored display devices, and more particularly to a display device which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer.

2. Description of Related Art Including Information Disclosed under Secs. 1.97–1.99

Various types of ornamental illuminated display devices have been provided in the past. Some of these devices which have obtained a desired visual effect of changing light patterns by passing light through liquids contained within transparent housings located between the viewer and the source of light. Two or more liquids of different colors may be utilized, with air bubbles being passed through the liquids to provide changing colors and patterns. Typical of such devices are those shown in U.S. Pat. Nos. 3,613, 264 - Vitka et al, 3,706,149 - Olivieri, and 3,964,194 - Gugeler. For instance, the Gugeler patent describes a changeable color device wherein an illumination source is located within three concentric cylinders formed of a light transmissive material, between pairs of which air is bubbled through a liquid.

Other ornamental illuminated display devices have obtained the desired visual effect of changing light patterns by causing the movement of one or more light transmissive means of varying shapes and colors with respect to the light source. Typical of such devices are those shown in the following Unites States patents:

| | |
|---|---|
| 2,867,716 — Ream | 3,791,058 — Mollica |
| 3,179,791 — Mole | 5,065,289 — Teng |
| 3,686,494 — Naylor | 5,394,309 — Brown |

The Ream patent discloses an ornamental display device wherein a bulb is located in a rotating drum which is provided with perforations through which light projects to a clear plastic cylindrical shell. The Mole patent describes an illuminating device wherein three lens of different colors are mounted in a triangular form on a support which rotates about a light source. The light passing through the lens also passed through an aperture formed in the spherical housing containing the light source and lens.

The Naylor patent illustrates a lighting apparatus wherein two concentric cylindrical light transmissive members having designs thereon are caused to counter-rotated around a light source. The heat generated by the light source causes air currents to engage blades secured to the cylinders to cause them to rotate. The Mollica patent sets forth a device for providing visual effects including a source of black light located within a rotatable hollow cylindrical translucent element having a pattern thereon subject to fluorescence. The translucent element is surrounded by a cylindrical lens which is located within a translucent rectangular housing.

The Teng patent reveals a display device which includes a crystal ball having a plurality of concave and convex portions which when filled with water form concave and convex lens through which is observed a decorative article within the ball. The ball is caused to rotate with respect to the base on which it is supported. The Brown patent is directed to a submersible device for changing colors in an aquarium. wherein a domed member having transparent plates of varying colors is caused to rotate around a light

# 2

source. with the light of varying colors projecting into the water through clear transparent windows in a housing enclosing the device.

### SUMMARY OF THE INVENTION

It is an object of this invention to provide an illuminated colored display device which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer. It is a further object of this invention to provide an illuminated colored display device which is readily adapted to provide changing colors in different hues and in different changing patterns. It is a still further object of this invention to provide such an illuminated colored display device which is readily assembled from limited number of components which are readily manufactured.

In accordance with this invention an illuminated colored display device is provided which includes a base. and at least two translucent members which are supported on turntables which are in turn supported by the base and are rotated with respect to the base by a drive system included in the base. The translucent members, which in the preferred embodiment are of a frustum shape, surround a source of illumination which is also supported on the base. Colored patterns consisting or areas of two or more colors or clear areas are provided on the translucent members. A third translucent member, which is supported on the base in a fixed position is of the same general shape as the others, but is formed with regions of varying thickness such that it distorts the light passing through it so as to both magnify and reduce the various colored areas to provide a visual effect which varies in color. and shape. An opaque cover is supported on the third translucent member over the ends of all of the translucent members. The translucent members may be lifted from the base to gain access to the source of illumination which in the preferred embodiment is an electric light bulb.

Other objects and further details of this invention will be set forth my making reference to the following drawings and specification.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of an illuminated decorative device in accordance with this invention.

FIG. 2 is an exploded perspective view of the illuminated decorative device in accordance with this invention.

FIG. 3 is a top plan view with portions removed and other portions broken away of the base of the illuminated decorative device in accordance with this invention.

FIG. 4 is a cross-sectional view of the base of the illuminated decorative device in accordance with this invention taken along the lines 4—4 in FIG. 1.

FIG. 5 is an exploded fragmentary view of a portion of the illuminated decorative device in accordance with this invention.

FIG. 6 is an exploded fragmentary view similar to FIG. 5 showing portions of the illuminated decorative device in accordance with this invention in a different position.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIGS. 1 and 2. a preferred embodiment of the illuminated decorative device 10 of this invention is shown. The principal components of the illuminated decorative device are a base 12. a first translucent member 14. a second translucent member 16. a third translucent member 18 and a cap 20.

5,685,097

| 3 | 4 |

The first, second and third translucent members 14, 16 and 18 are of a generally cylindrical or more particularly a frustum shape, with the larger diameter end being positioned toward the base and the smaller diameter end being positioned away from the base. The second translucent member 16 is of a larger diameter than the first translucent member 14, and the third translucent member 18 is of a larger diameter than the second translucent member 16, such that the third translucent member may be placed around the second and the second around the first. In the preferred embodiment of this invention, the first, second and third translucent members are formed of a clear translucent plastic body.

Translucent color patterns are provided on the surfaces of the first and second translucent members 14 and 16. As shown in FIGS. 2, 5, and 6, a two-color pattern consisting of red 28 and yellow 30 areas is provided on the surface of the first translucent member 14. This color pattern may be applied in various ways, such as by painting, for instance by silk screen or by securing a transparent film formed with areas of each of the colors, to the member 14, or by applying two films, each of which bears one of the colors. Similarly, a colored pattern is provided on the surface of the second translucent member 16. As illustrated in FIGS. 2, 5, and 6, blue 32 and yellow 34 areas are provided, as well as clear areas 36. Further, in some areas, the blue and yellow overlap so as to provide a generally green area 38. Again, the colored areas may be provided in numerous different ways known in the art.

The third translucent member 18 has a generally smooth inner surface and a wave-like outer surface, such that it has alternate thin areas 40 and thick areas 42. These alternating thin and thick areas provide a vertically oriented pattern of alternating magnifying and reducing portions.

As will be more fully explained hereafter with reference to FIGS. 3 and 4, a drive system is provided in the base 12, which in conjunction with turntables supporting the first and second translucent members 14 and 16, causes each of them to rotate with respect to the base in an opposite direction with respect to each other. Thus, with the first and second translucent members rotating in the illuminated decorative device as shown in FIG. 1, varying patterns of shape and color are observed at a fixed point spaced from the illuminated decorative device.

Referring now to FIGS. 3 and 4, the drive system which causes the first and second translucent members to rotate with respect to the base and in opposite directions with respect to each other will be described. The truncated cone-shaped base 10 is provided with a top 44, from which is suspended by downwardly projecting posts 46, a portion of one of which is shown, an electric drive motor 48. The output shaft of the drive motor has affixed thereto a gear 52 which engages a gear 54 which is connected to a shaft, (not shown) which extends through the top 44 and has secured thereto a pair of gears 56 and 58 which are of different diameters. The smaller diameter gear 58 drives still another gear 60 which is supported on a post 62 extending from the base 44. The gear 56 also drives a gear 64 which is supported from another post 66 which extends from the base 44.

A first turntable 68 as shown in FIGS. 3 and 4 is provided for supporting the first translucent member 14. The first turntable 68 has an aperture therein such that it fits over an upwardly extending cylindrical member 70 of the top 44. A downwardly projecting cylindrical member 71 is provided on the first turntable 68. Formed on the outer surface of the cylindrical member 71, which surrounding the cylindrical

member 70, is a gear 72 which engages the teeth of gear 60, as is best seen in FIG. 3, so as to be driven by the motor 48.

Similarly, a second turntable 74 is provided for supporting the second translucent member 16. The second turntable 74 is provided with a downwardly extending cylindrical portion 76, on the inner surface of which is formed a gear 78. As best seen in FIG. 3, the gear 78 is engaged by the gear 64 such that the second turntable 74 is also driven by the electric motor 48.

To summarize, the drive train for the first turntable 68, which supports the first translucent member 14 includes gears 52, 54, 56, 60 and 72. The drive train for the second turntable 74, which supports the second translucent member 16, includes gears, 52, 54, 58, 64 and 78. It will be apparent to a person skilled in the art that by varying the diameters of the various gears involved in the gear trains, the speeds of rotation of the turntables 68 and 74 may be changed with respect to the base 12, and also with respect to each other. Thus, with the drive trains as shown, energization of the motor 48 will cause the turntables 68 and 74 and therefore the first and second translucent members 14 and 16 to rotate in opposite directions with respect to each other.

Supported in the center of base 12 is a electrical lamp socket 80 for receiving and energizing a source of illumination 82 such as an incandescent light bulb as shown in FIGS. 5 and 6. The energized light bulb provides light which is transmitted through first, second and third translucent members to a viewers eyes.

Referring to FIGS. 5 and 6, the light source 82 is shown along with exploded, partial sectional views, of the first translucent member 14, the second translucent member 16 and the third translucent member 18. In accordance with conventional standards for designating color, the first translucent member is shown to have a pattern of red and yellow areas. Similarly, the second translucent member is shown to have blue, yellow, green and clear areas. As light from the light source 82 passes through the first and second translucent members 14 and 16 and the colors thereon, changing color patterns are observed through the third translucent member 18 due to the motion of the first and second translucent members 14 and 16 with respect to each other. It should be understood that the colors represented on the third translucent member 18, in FIGS. 5 and 6 are those which are viewed from an external point. The colors do not represent actual colored areas of the third translucent member, but rather the changing colors of the light which has passed through members 14 and 16. FIG. 6, is similar to FIG. 5, but shows the first and second translucent members 14 and 16 in a subsequent position with respect to each other. A comparison of the colored areas on third translucent member 18 in FIGS. 5 and 6 illustrates the changing of the pattern and of the color as observed through member 18 due to the displacement of members 14 and 16 with respect to each other.

As shown in FIGS. 5 and 6, a translucent but light dispersing thin member 84 may be provided between light source 82 and the first translucent member 14, to disperse the light emitted from the source 82, so as to eliminate the viewing of a particularly bright spot through the three translucent members.

Finally, in a preferred embodiment, an opaque cap 20 is placed upon the top of the third translucent member 18 and supported thereby. Annular openings 84, 86 and 88 are provided in the top of the cap 20 to permit The convective air flow through the base and inside the first translucent member 14 around the lamp 82 to dissipate the heat generated thereby.

5,685,097

| 5 | 6 |

It should be further noted that the first, second and third translucent members and the cap **20** may be easily lifted off the base **12** and the turntables **68** and **74** to gain access to the bulb **82**.

While a particular embodiment of the invention has been shown, it would be apparent to one skilled in the art that the particular shape of the base **12** and of the first, second and third translucent members **14**, **16**, and **18** could be readily changed as could the pattern of colors and the colors provided on the first and second translucent members **14** and **16**. Further, rather than providing the alternating thick and thin wall portions in third translucent member **18**, so as to provide alternately reducing and magnifying areas, it could be of uniform thickness or of irregular thickness in various arrangements.

It should be apparent to those skilled in the art that while what has been described are considered at present to be the preferred embodiments of the illuminated colored display device of this invention, in accordance with the patent statutes, changes may be made in the illuminated colored display device without actually departing from the true spirit and scope of this invention.

The appended claims are intended to cover all such changes and modifications which fall within the true spirit and scope of this invention.

What is claimed is:

1. An illuminated decorative device comprising:

a base;

a source of illumination supported on said base;

a first translucent member supported on said base, said first translucent member having a pattern formed thereon of at least two colors, said first translucent member surrounding said source of illumination;

a second translucent member supported on said base, said second translucent member having a pattern formed thereon of at least two colors, said second translucent member surrounding said first translucent member;

a third translucent member supported on said base surrounds said second translucent member, said third translucent member is formed with magnifying and reduction portions; and

a drive system supported on said base, said drive system moving said first translucent member with respect to said base, said drive system moving said second translucent member with respect to said base and with respect to said first translucent member, whereby the illumination from said source of illumination as observed through said third translucent member is a varying pattern of colors, shapes and magnification thereof depending upon the relative positions of said first, second and third translucent members with respect to each other.

2. The illuminated decorative device of claim 1, wherein said first and second translucent members are of a generally cylindrical shape, with said second translucent member being of a larger diameter than the first translucent member.

3. The illuminated decorative device of claim 1, wherein said first and second translucent members are of a frustum shape, with said second translucent member being of a larger diameter than the first translucent member.

4. The illuminated decorative device of claim 1, wherein said first translucent member has a pattern formed thereon of two different colors.

5. The illuminated decorative device of claim 1, wherein one of said first and second translucent members has a pattern formed thereon by two transparent colored portions and a clear portion, with portions of said two colors overlying each other.

6. The illuminated decorative device of claim 1, wherein said translucent members are formed of transparent colorless base, with said pattern of transparent colors being applied thereto.

7. The illuminated decorative device of claim 1, wherein a first end of said third translucent member is supported on said base, and a cover is secured to a second end of said third translucent member.

8. The illuminated decorative device of claim 1, wherein said first, second, and third translucent members are of a generally cylindrical shape, with said second translucent member being of a larger diameter than the first translucent member and the third translucent member being of a larger diameter than the second translucent member.

9. The illuminated decorative device of claim 1, wherein said first, second, and third translucent members are of a frustum shape, with said second translucent member being of a larger diameter than the first translucent member and the third translucent member being of a larger diameter than the second translucent member.

10. The illuminated decorative device of claim 1, wherein said drive system causes said first translucent member to move in a first direction and said second translucent member to move in a direction opposite said first direction.

11. The illuminated decorative device of claim 10, wherein said drive system includes first and second counter rotating turntables, said first turntable supporting said first translucent member and said second turntable supporting said second translucent member.

12. The illuminated decorative device of claim 1, wherein said source of illumination is electrically energized.

13. A decorative lamp comprising:

a base;

a drive system housed in said base;

an illumination source supported on said base;

a first translucent member having portions of different colors surrounds said illumination source and is supported on said base;

a second translucent member having portions of different colors surrounds said first translucent member and is supported on said base; and

a third translucent member surrounding said second translucent member and is supported on said base. Said third translucent member has magnifying portions through which said illumination passes, said drive system causing said first and second translucent members to move with respect to each other, and with respect to said base and said third translucent member, whereby the color and pattern of the illumination emitted through said third translucent member is of a changing pattern, color and magnification thereof when observed from a fixed position spaced from the lamp.

* * * * *

# EXHIBIT E

Law Offices of

# CHAPMAN AND CUTLER LLP

Theodore S. Chapman
1877-1943
Henry E. Cutler
1879-1959

111 West Monroe Street, Chicago, Illinois 60603-4080
Telephone (312) 845-3000
Facsimile (312) 701-2361
chapman.com

*Fran*

San Francisco
595 Market Street
San Francisco, CA 94105
(415) 541-0500

Salt Lake City
201 South Main Street
Salt Lake City, UT 84111
(801) 533-0066

Robert J. Schneider
(312) 845-3919
iplaw@chapman.com

December 21, 2007

## EXTREMELY URGENT

VIA FACSIMILE: (847) 914-2825
CONFIRMATION VIA MAIL

Mr. Jeff Rein
President and Chief Operating Officer
Walgreens Co.
200 Wilmont Road
Deerfield, Illinois 60015

Re:    Living Aquarium

Dear Mr. Rein:

We represent Rabbit Tanaka Corporation and it has come to our client's attention that Walgreens is offering for sale and selling in the United States, an "Animated Ocean Lamp" product under the Living Aquarium brand name, which is made in China. One such product is identified as WIC # 544 773 (a copy of the sales receipt is enclosed). This product is an infringing copy of our client's "Virtual Vision" product. Rabbit Tanaka is the original inventor of this product which it sells under the brand name Virtual Vision.

The Virtual Vision product of our client is covered by United States Patent No. 5,685,097, a copy of which is enclosed, as well as Rabbit Tanaka's copyrights and trade dress rights in its products. Rabbit Tanaka considers any infringement of these intellectual property rights to be very serious, and is very aggressive in protecting these rights, including Federal Court litigation. At the present time, we have several litigation matters pending in the United States and are moving against the manufacturers of these infringing products in China.

2363193.01.01.doc
1709278

Law Offices of
## CHAPMAN AND CUTLER LLP

Mr. Jeff Rein
December 21, 2007
Page 2

Our client has instructed us to prepare a complaint against you, your supplier, T.W.I.E., and your customers for filing with the appropriate United States Federal District Court charging Walgreens and other entities within in the United States to whom you have sold or distributed your products with infringement of Rabbit Tanaka's patent and intellectual property rights. We are also taking the necessary steps to assist the U.S. Customs Service in prohibiting the importation of these infringing products into the United States. Finally, we are prepared to file a complaint with the United States International Trade Commission to exclude the importation of these infringing lamps.

Under these circumstances, we demand that you cease and desist from all purchasing, sale, offering for sale, distribution, and advertisement of these products. If we do not receive an immediate indication of your voluntary compliance, we intend to proceed with the filing of the complaint with the International Trade Commission and the Customs Service and against you and your customers in Federal District Court, and take such other action as may be appropriate for Rabbit Tanaka to protect its rights and to receive compensation and treble damages for your willful acts of infringement.

If you would like to resolve this matter and mitigate your damages without litigation, remove these products from your shelves immediately and contact me; otherwise I will proceed as indicated above.

Sincerely,

CHAPMAN AND CUTLER LLP

By: _____
Robert J. Schneider

RJS/bw
Enclosure:     U.S. Patent No. 5,685,097

cc:     Ms. Catherine Locsin
Robert R. Delaney, Jr., Walgreens Co.

# EXHIBIT F



Jennifer H. Hamilton
jhh@eclipsegrp.com

10605 Balboa Blvd. Suite 300
Granada Hills, CA 91344
(818) 488-8141 Telephone
(818) 332-4205 Facsimile

THE ECLIPSE GROUP LLP

CHICAGO, IL

DURHAM, NC

LOS ANGELES, CA

ORANGE COUNTY, CA

*AN INTELLECTUAL PROPERTY LAW FIRM*

*O'CONNOR CHRISTENSEN & MCLAUGHLIN TRIAL DIVISION* • *ECLIPSE INTELLECTUAL PROPERTY LAW DIVISION*

January 21, 2008

**VIA FACSIMILE 312-701-2361**
**& FIRST CLASS MAIL**

Mr. Robert J. Schneider
Chapman and Cutler
111 West Monroe Street
Chicago, IL 60603

Re:    Living Aquarium

Dear Mr. Schneider:

Our firm represents Tradewinds International ("Tradewinds") in its intellectual property matters. Tradewinds supplies animated ocean lamps, also referred to as "Living Aquarium," to Walgreens Company ("Walgreens") for sale through its various Walgreens locations. Illustrations of the Living Aquarium are attached to this letter as Exhibit A.

Our firm has now completed the review of your claim that the Tradewinds Living Aquariums (as illustrated in the attached photograph) infringes US Patent No. 5,685,097 (the '097 Patent). For the reasons set forth below, we do not believe that the Tradewinds' Living Aquariums infringes the claims of '097 Patent.

The claims of the '097 patent are directed to an "illuminated decorative device" or to a "decorative lamp." The device comprises a base, a source of illumination, a first and second translucent member each having a pattern formed thereon of at least two colors, and a third translucent member with magnifying and reduction portions. A drive system moves the first and second translucent members with respect to the base and with respect to each other. What is observed from the source of illumination is described as "a varying pattern of colors, shapes and magnification thereof depending upon the relative positions of said first, second and third translucent members with respect to each other" (Claim 1) and as "the color and pattern of the illumination emitted through said third translucent member is of a changing pattern, color and magnification thereof when observed from a fixed position spaced from the lamp" (Claim 13).

THE ECLIPSE GROUP LLP

Mr. Schneider
1/21/2008
Page 2 of 3

Furthermore, each of the claims requires first, second and third translucent members, each supported on a base, where the third translucent member surrounds the second translucent member which surrounds the first translucent member which surrounds the illumination source.

The nature of the invention is described in the Specification under "Field of Invention" as "a display device which presents the visual effect of changing colors in changing patterns of shapes when viewed by an observer" (Col. 1, lns. 7-10). The changing patterns of color and shape are further explained in the specification in that "[t]he colors do not represent actual colored areas of the third translucent member, but rather the changing colors of the light which has passed through members 14 [first translucent member] and 16 [second translucent member]" (Col. 4, lns. 44-47). FIGs. 5 & 6 of the '097 Patent illustrate how the illumination through the first and second translucent members create a change in the observed patterns and colors. This is highlighted in the specification at Col. 4, lines, 49-54, which states, "A comparison of the colored areas on the third translucent member 18 in FIG. 5 and 6 illustrates the changing of the pattern and the color as observed through member 18 due to the displacement of members 14 and 16 with respect to each other."

By way of comparison, the Tradewinds's Living Aquariums does not contain, either literally or equivalently, a first, second, and third translucent member supported on a base where the movement of the translucent members is used to produce the visual effect of varying patterns of colors and shapes. The Tradewinds' Living Aquariums includes an inner rotating belt having a simulated or artificial aquarium scene and background images, a middle transparent rotating belt (moving relative to the inner belt) having fish imprinted thereon, and a single outer transparent member through which a user may view both the background belt and the fish imprinted on the middle transparent belt (analogous to the glass bowl of a real aquarium). The images viewed by a viewer are the images imprinted on the first and second belts. No change in color or pattern of the images on the belts, as viewed through the outer transparent member, is created by the projection of the illumination source through the belts, as claimed in the '097 Patent and as illustrated in FIGs. 5 & 6 of the '097 Patent. Accordingly, the movement of the background belt and the fish imprinted belt, as viewed by a user, does not create a visual effect of varying colors or shapes, as described and claimed in the '097 Patent. As such, in our opinion, the Tradewinds' Living Aquariums is not within the scope of the claims of the '097 patent.

For the reasons set forth above, Tradewinds' Living Aquariums, and accordingly, the Living Aquariums sold by Walgreens, through its various Walgreens locations, do not infringe the '097 Patent. Our client desires, however, to resolve this matter amicably without the necessity of litigation. Although we believe our position to be legally sound, in the event that your client continues to seek legal action against Walgreens and Tradewinds, we request that you contact us directly so that we can discuss how we may resolve this dispute without resorting to litigation.



**THE ECLIPSE GROUP LLP**

Mr. Schneider
1/21/2008
Page 3 of 3

This letter shall not constitute a waiver of, or otherwise prejudice, any of Tradewinds' or Walgreens' legal rights.

Sincerely,
THE ECLIPSE GROUP LLP

Jennifer H. Hamilton

Enclosure



Exhibit A

# EXHIBIT 2

CONFORMED COPY

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION
Edward O'Connor, Esq. (State Bar. No. 123398)
Becky V. Christensen, Esq. (State Bar No. 147013)
Craig McLaughlin, Esq. (State Bar No. 182876)
1920 Main Street, Suite 150
Irvine, California 92614
Telephone: (949) 851-5000
Facsimile: (949) 851-5051
E-mail:  efo@eclipsegrp.com
E-mail:  bvc@eclipsegrp.com
E-mail:  cml@eclipsegrp.com

ATTORNEYS FOR PLAINTIFFS
TRADEWINDS INTERNATIONAL ENTERPRISES INC.
AND WALGREEN CO.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADEWINDS INTERNATIONAL ENTERPRISES, INC., a California corporation, and WALGREEN CO., an Illinois Corporation,<br><br>          Plaintiffs,<br><br>vs.<br><br><br>RABBIT TANAKA CORPORATION, LTD., a Hong Kong corporation, and RABBIT TANAKA CORPORATION, USA, a Texas corporation,<br>          Defendants. | Case No.:  CV08-01334 ODW (JTLx)<br><br>AMENDED COMPLAINT FOR:<br>1) DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF UNITED STATES PATENT NO. 5,685,097;<br>2) DECLARATORY JUDGMENT OF UNENFORCEABILITY AND INVALIDITY OF UNITED STATES PATENT NO. 5,685,097;<br>3) FALSE MARKING UNDER 35 U.S.C. § 292; AND<br>4) FALSE ADVERTISING UNDER THE LANHAM ACT<br><br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Plaintiffs, TRADEWINDS INTERNATIONAL ENTERPRISES, INC. ("Tradewinds") and WALGREEN CO. ("Walgreen"), file this Amended Complaint against RABBIT TANAKA CORPORATION, LTD. and RABBIT TANAKA CORPORATION, USA ("Defendants") and allege as follows:

## INTRODUCTION

1.    This is an action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the United States Patent Act, 35 U.S.C. § 1 *et seq.*, for a declaration that Tradewinds' Animated Ocean Lamp products do not infringe United States Patent No. 5,685,097 ("the '097 Patent"), titled "Illuminated Colored Display Device", issued by the United States Patent & Trademark Office to Defendants on November 11, 1997.

2.    This is also an action brought under the False Marking Statue, the United States Patent Act, 35 U.S.C. § 292.

## THE PARTIES

3.    Plaintiff Tradewinds is a California corporation with its principal place of business located at 432 North Canal Street, Suite 2, South San Francisco, CA 94080.

4.    Plaintiff Walgreen is an Illinois corporation with its principal place of business and headquarters at 200 Wilmont Road, Deerfield, Illinois 60015. Walgreen has many retail locations including many in the Central District of California.

5.    Upon information and belief, Defendant RABBIT TANAKA CORPORATION, LTD. is a Hong Kong corporation with its principal place of business located at 18 Ka Yip Street, MP Industrial Centre, Block A, 7/F, Sui Sai Wan, H.K. and Defendant RABBIT TANAKA CORPORATION, USA is a

Texas corporation with its principal place of business located at 5925 Lovell Avenue, Fort Worth, TX 76107.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a), 2201 and 2202, and 35 U.S.C. § 292.

7.     Upon information and belief, Defendants are doing business in this judicial district and are subject to personal jurisdiction in this judicial district.

8.     Upon information and belief, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 because Defendants and Plaintiffs regularly engage in business in this judicial district and regularly solicit business in this judicial district, and derive substantial revenue from goods sold and used in this judicial district, and that California is a more reasonable locus for the convenience of the parties in this case since Tradewinds, its witnesses and counsel are located in California, and that due to indemnity, the dispute is primarily between Tradewinds and the Defendants, whereby California is geographically juxtapositioned between the Rabbit Tanaka Defendant in Hong Kong, and the other Rabbit Tanaka Defendant in Texas.

## FACTS GIVING RISE TO THIS ACTION

9.     Tradewinds distributes products in California including an "Animated Ocean Lamp" under the "Living Aquarium" brand name. True and correct copies of photographs of the Animated Ocean Lamp are attached hereto as Exhibit "A".

10.     Tradewinds sold a number of its Animated Ocean Lamps to Walgreen.

11.     Upon information and belief, Defendants design, develop, manufacture, and market entertainment and novelty lighting products, including

a "Virtual Vision" product for sale in the United States.  Upon information and belief, Defendants distribute their products throughout the United States, by and through its office in Fort Worth, Texas.

12.    Upon information and belief, Defendants have been selling and distributing a "Virtual Vision" product in the stream of commerce of the United States, including in southern California, known as a "Salt Water Fish Virtual Lamp."  True and correct copies of photographs of the Salt Water Fish Virtual Lamp as advertised on the Spencer's online store are attached hereto as Exhibit "B".

13.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamps are sold in numerous retail outlet stores including Spencer's stores throughout the United States, including throughout California.  This product has been purchased from a Spencer's store in Orange County, California.

14.    Upon information and belief, Defendants have marked the Salt Water Fish Virtual Lamp with the '097 Patent.  True and correct copies of photographs of the Salt Water Fish Virtual Lamp showing the marking of the '097 Patent are attached hereto as Exhibit "C".  Additionally attached is a true and correct copy of the '097 Patent hereto as Exhibit "D".

15.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamp is not covered  by the '097 Patent and on information and belief never has been.

16.    Defendants have represented that the '097 Patent is exclusively licensed to them and have rights to sue for infringement thereof.

17.    On December 21, 2007, Defendants' counsel wrote a cease and desist letter to Walgreen regarding the sales of the Animated Ocean Lamp (a true copy of said letter attached hereto as Exhibit "E").  In the cease and desist letter, Defendants specifically identified the '097 Patent and alleged that the Animated Ocean Lamp, identified as WIC # 544 773, is an "infringing copy of our client's

'Virtual Vision' product."

18.    Defendants' counsel further indicated in the cease and desist letter that "[o]ur client has instructed us to prepare a complaint against you, your supplier, T.W.I.E., and your customers for filing with the appropriate United States Federal District Court charging Walgreens and other entities within the United States ... with patent infringement of Rabbit Tanaka's patent and intellectual property rights."    Upon information and belief, the initials "T.W.I.E." was used in the letter to refer to Tradewinds.

19.    Additionally, the cease and desist letter states that "[if] we do not receive an immediate indication of your voluntary compliance, we intend to proceed with the filing of the complaint with the International Trade Commission and the Customs Service and against you and your customers in Federal District Court ..."

20.    Tradewinds has a defense and indemnification agreement with Walgreen and has confirmed the obligation to Walgreen.

21.    After Tradewinds was informed of the cease and desist letter, Plaintiffs' counsel responded to it by letter, dated January 21, 2008, setting forth reasons for non-infringement of the '097 Patent.    A true copy of Plaintiffs' counsel's letter is attached hereto as Exhibit "F".

22.    Subsequent to the filing of the Complaint by Tradewinds in the instant case, Defendants filed their own complaint alleging infringement of the very same '097 Patent in controversy.    The subsequent case was purportedly filed in U.S. District Court in the Northern District of Illinois.

23.    On March 13, 2008, a hearing for temporary restraining order was held in the Northern District of Illinois, after less than two hours notice to Tradewinds' counsel in California.    At the hearing, Mr. Robert J. Schneider, counsel for Defendants, stated in open court that he personally prosecuted the application which became the '097 Patent.    At the same hearing, Mr. Schneider

also stated on the record that Defendants' patented lamp had been sold for almost fifteen (15) years.

24.    The application for what became the '097 Patent, however, was filed in December of 1995, little more than twelve years prior to March 2008. Accordingly, on information and belief, applicant intentionally withheld such sales information from the examiner at the USPTO during prosecution of the application which became the '097 Patent.  On information and belief, such sales information was highly material and, had the examiner known such sales existed, the patent would never have issued pursuant to 35 U.S.C. § 102.  Had applicant or his patent counsel known that such sales occurred more than one year prior to the filing of the application for patent, applicant and his counsel should never have filed the application nor signed the declaration that accompanied it.  They also were under the duty of candor and disclosure to inform the examiner of the sales when such sales were discovered.   On information and belief, applicant committed inequitable conduct and fraud on the USPTO warranting a finding of unenforceability and invalidity.

## FIRST CAUSE OF ACTION
### DECLARATION OF NON-INFRINGEMENT OF THE '097 PATENT

25.    Plaintiffs Tradewinds and Walgreen re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 24 of this Amended Complaint.

26.    There is an actual dispute between Defendants and Plaintiffs as to whether the Animated Ocean Lamps, its design, manufacture, sales, offers for sale and importation into the United States infringes the '097 Patent.

27.    Plaintiffs seek and are entitled to a declaratory judgment that the design, manufacture, sale, offers for sale and importation into the United States of its Animated Ocean Lamps do not infringe or violate the '097 Patent.

## SECOND CAUSE OF ACTION

### DECLARATION OF UNENFORCEABILITY AND INVALIDITY OF THE '097 PATENT

28.    Plaintiffs Tradewinds and Walgreen re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 27 of this Amended Complaint.

29.    On information and belief, Plaintiffs, the '097 Patent was procured by fraud on the United States Patent and Trademark Office and is therefore unenforceable.

30.    On information and belief, Plaintiffs, the '097 Patent is invalid due to sales prior to the bar date as provided by 35 U.S.C. § 102.

31.    Plaintiffs seek and are entitled to a declaratory judgment that the '097 Patent is unenforceable and invalid.

## THIRD CAUSE OF ACTION

### FALSE MARKING UNDER 35 U.S.C. § 292

32.    Plaintiffs Tradewinds and Walgreen re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 24 of this Amended Complaint.

33.    By way of marking their product with the '097 Patent number when it was not covered by the patent, Defendants violated 35 U.S.C. § 292.

34.    Plaintiffs are entitled to a judgment declaring that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent.

35.    Plaintiffs seek and are entitled to all relief provided by 35 U.S.C. § 292.

## FOURTH CAUSE OF ACTION

FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

36.    Plaintiffs Tradewinds and Walgreen re-allege and incorporate by reference herein the allegations contained in paragraphs 1 through 24 of this Amended Complaint.

37.    Upon information and belief, Defendants' Salt Water Fish Virtual Lamp, which has been sold through the stream of commerce in the United States including throughout California, is not covered by the '097 Patent.

38.    Defendants violated 15 U.S.C. § 1125(a) by having falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent when it was not covered.

39.    Plaintiffs seek and are entitled to a judgment that Defendants violated §43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.    Plaintiffs seek and are entitled to the remedies set forth in 15 U.S.C. § 1117(a) including an accounting of profits, damages, enhancement thereof, and attorneys' fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs Tradewinds and Walgreen prays that judgment be entered against Defendants:

1.    Trial by jury is demanded on all issues so triable as permitted by F.R.C.P. 38(b);

2.    A declaration that the Animated Ocean Lamps manufactured for Tradewinds does not infringe, either directly, indirectly, any valid and enforceable claim of the '097 Patent;

3.    A declaration that Defendants falsely marked their Salt Water Fish Virtual Lamp with the '097 Patent;

4.    A declaration that Defendants falsely advertised their Salt Water Fish Virtual Lamp as being covered by the '097 Patent;

5.     An Order providing that Defendants and all of their officers, agents, servants, employees, attorneys, privies, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from making any commercial or promotional communication, publication, distribution, dissemination, broadcast or otherwise public dissemination of any false or misleading representations that Animated Ocean Lamps or its design constitutes an infringement of the '097 Patent;

6.     All remedies as provided by 35 U.S.C. 292 and 15 U.S.C. § 1117(a) including an accounting of Defendants' profits, damages, enhanced damages, attorneys' fees and penalties;

7.     A declaration that Defendants committed inequitable conduct and have unclean hands;

8.     A declaration that the '097 Patent is unenforceable and invalid;

9.     A finding that this is an exceptional case;

10.     An assessment against Defendants of the costs of this action and attorneys' fees; and

11.     Such other relief as is deemed just and proper.

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION

Dated: March 17, 2008

_____
Craig McLaughlin, Esq.
Attorneys for Plaintiffs
TRADEWINDS INTERNATIONAL
ENTERPRISES INC. AND WALGREEN
CO.

## DEMAND FOR JURY TRIAL

Plaintiff Tradewinds and Walgreen demand a trial by jury of all issues properly triable by jury in this action.

THE ECLIPSE GROUP LLP
O'CONNOR CHRISTENSEN & MCLAUGHLIN
TRIAL DIVISION

Dated: March 17, 2008

_____
Craig McLaughlin, Esq.
Attorneys for Plaintiffs
TRADEWINDS INTERNATIONAL
ENTERPRISES INC. AND WALGREEN
CO.

## PROOF OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen (18) years and employed in the County of Orange, State of California. I am employed in the office of THE ECLIPSE GROUP LLP, O'CONNOR CHRISTENSEN & MCLAUGHLIN, TRIAL DIVISION, members of the Bar of the above entitled Court, and I made the service referred to below at their direction. My business address is 1920 Main Street, Suite 150, Irvine, California 92614.

On March 17, 2008, I served the foregoing document:

### AMENDED COMPLAINT

☒ **VIA U.S. MAIL.** I placed a true copy of the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California on March 17, 2008, addressed as set forth below. I am readily familiar with firm's practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ **VIA EMAIL.** On March 17, 2008, I transmitted the foregoing document(s) by E-mail to the parties at their respective e-mail addresses as indicated below.

Robert J. Schneider
Chapman & Cutler LLP
111 W. Monroe St.
Chicago, IL 60603
Email: bschneid@chapman.com

I declare under penalty of perjury, under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 17, 2008, at Orange County, California.

_Julie Tran_
Julie Tran